(121 App. Div. 667.)

MOORE v. VULCANITE PORTLAND CEMENT CO. et al.

(Supreme Court, Appellate Division, First Department.   October 25, 1907.)

PRINCIPAL AND AGENT—UNDISCLOSED PRINCIPAL—RIGHTS.

Though, generally, an undisclosed principal may enforce a contract made by his agent as the agent's own contract, where a company, in contracting to sell cement, insisted on making a personal contract with a responsible firm, refused to deliver the cement under the contract to a corporation which it understood had succeeded the firm, called attention to the fact that correspondence had been conducted by plaintiff on behalf of the firm or corporation, and refused to admit the existence of the contract until it was definitely determined that the party with which it had contracted was the firm, plaintiff cannot enforce the contract as undisclosed principal of the firm.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 40, Principal and Agent, §§ 502–520.]

Appeal from Trial Term.

Action by Albert S. Moore against the Vulcanite Portland Cement Company and others.  From a judgment for plaintiff, and an order denying a new trial, defendant company appeals.  Reversed, and new trial ordered.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGH-LIN, CLARKE, and HOUGHTON, JJ.

William F. Scott, for appellant.
Horace D. Byrnes, for respondent.

INGRAHAM, J.  This appellant made a contract with V. J. Hedden & Sons, a copartnership, whereby the appellant "agrees to sell,

and V. J. Hedden & Sons agree to buy," 25,000 barrels of cement at
a price fixed. This contract was signed "The Vulcanite Portland
Cement Company, by W. F. Vernon, Sales Agt. Accepted. L. O.
Hedden"; the latter being a member of the firm of V. J. Hedden &
Sons. This contract was dated May 1, 1902, and the original instru-
ment was transmitted to the appellant with a letter dated May 6, 1902,
signed by "V. J. Hedden & Sons Co., per Moore," which stated:

"We beg to return herewith, duly signed, the contract of sale dated May 1st,
for 25,000 barrels of Vulcanite Portland Cement, as per our acceptance given
to you. We will give you due notice of time and destination in making the
deliveries under said contract."

On June 11, 1902, the appellant was, by letter signed "V. J. Hedden
& Sons Co., per Moore," directed to ship 5,000 barrels of cement to
Newark, N. J. A letter similarly signed was sent to the appellant on
June 12, 1902, requesting it to deliver a minimum of 2,000 barrels per
week in addition to the 300 barrels per week which were to be shipped
as per order given the day before. This was followed on the 13th of
June by a letter similarly signed, with a request for 2,000 barrels ad-
ditional to be shipped to Allegheny, Pa. On June 14th there was a
letter to the appellant, signed "V. J. Hedden & Sons, per Moore," dis-
puting the statement of appellant in relation to the delivery at Harri-
son, N. J., insisting upon "our contract rights," and requesting to know
whether the appellant intended to refuse to fulfill its contract. This
was followed by a letter, signed "V. J. Hedden & Sons, per Moore,"
in which the writers demanded a reply before 12 o'clock of that day as
to whether the appellant refused to go on and deliver cement under the
contract. On the same day the appellant wrote a letter to "V. J. Hed-
den & Sons," stating that they had referred the matters contained in
their letter of the 14th to their main office in Philadelphia. And on
June 20th the appellant wrote to "V. J. Hedden & Sons Company"
that they were in receipt of a letter under date of the 18th instant on
the letter head of "V. J. Hedden & Sons" and signed "V. J. Hedden
& Sons Company, per Moore," and stating that the matter was in a
very unsatisfactory shape; that according to the contract the pur-
chaser was named as "V. J. Hedden & Sons," and it was accepted by
"L. O. Hedden." It was then stated that the appellant had been ad-
vised that the firm of V. J. Hedden & Sons had been dissolved or was
in process of liquidation, and that its business had been taken over by
the V. J. Hedden & Sons Company; that this left the matter without
a binding contract "upon you, your company or your firm, whichever
one it is. Such a contract is not mutual, and therefore is not binding.
* * * We supposed we were selling to the responsible firm of V.
J. Hedden & Sons 25,000 barrels of cement to be delivered at Harrison,
N. J. * * * Now, we have to suggest that if you want this cement
for the V. J. Hedden & Sons Company to be used at Harrison, N. J.,
in connection with the contract which we understand that company has
at that point, we will execute a properly drawn contract with the in-
corporated company, provided we have as security for the payment of
the cement so sold, in accordance with the terms thereof, the personal
obligations of Viner J. Hedden, Charles R. Hedden, Samuel S. Hed-
den, and Louis O. Hedden, whom we understand to be the persons

who compose the firm of V. J. Hedden & Sons. You will recognize that it is not reasonable to ask us to sell an incorporated company, with so small a capital as $1,000 paid in, a bill of merchandise which would exceed over $30,000 delivered at Harrison, N. J. Nor does our contract call for a delivery to the incorporated company, nor is there any acceptance by the incorporated company of the contract."

The answer to that letter, signed "V. J. Hedden & Sons, per Moore," stated that the appellant was mistaken in understanding that the business of V. J. Hedden & Sons had been taken over by the V. J. Hedden & Sons Company; that the firm of V. J. Hedden & Sons, comprised of the four gentlemen named in its letter, still exists and is doing business; that Louis Hedden, as a member of the firm of V. J. Hedden & Sons, had ample authority to bind his firm, and in pursuance of such authority executed the contract in question; that "you were and are selling to the responsible firm of V. J. Hedden & Sons the 25,000 barrels of cement, but the price to be paid you is $1.02 per barrel free on board cars at Vulcanite, N. J., and we have given and will give you the shipping directions as to the point or points to which we wish this cement sent." This was followed by further correspondence. There was finally a letter written by the appellant to V. J. Hedden & Sons, stating that the letter of June 21, 1902, was signed by "your Mr. Moore," and they were advised that this statement of Mr. Moore did not bind the firm; that the appellant was also advised:

"That this difficulty can be obviated by a letter addressed to us, in which it will be stated that the firm does exist between the same parties as heretofore and is not in liquidation; and that the firm as such accepts the terms of the contract of May 1, 1902, with this company as binding upon the firm and the respective members thereof—and then have each member of the firm sign this letter, when this company will then comply with the terms of the contract on its part to be kept and performed."

In answer to this, a letter, dated June 28, 1902, was addressed to the appellant, signed by V. J. Hedden & Sons, V. J. Hedden, Charles R. Hedden, Samuel S. Hedden, and L. O. Hedden. It was there stated that, in compliance with the request as stated in appellant's letter of the 27th instant:

"We beg to confirm the statement as made to you in the previous letter written to you on 26th inst. and signed by Mr. Moore, to the effect that the firm of V. J. Hedden & Sons, as a copartnership, is still in existence for the purpose of prosecuting business, and as such firm does hereby confirm and ratify the contract executed on May 1, 1902, with your company for the purchase of 25,000 barrels of Vulcanite Portland cement at the price of $1.02 per barrel in bags f. o. b. at mill, delivery to be as ordered, such contract having been signed by Mr. L. O. Hedden of the firm."

As this somewhat changed the conditions of the contract of May 1, 1902, there was some further correspondence about it when, on July 11, 1902, a letter was written to the appellant as follows:

"Dear Sirs: We hereby confirm and ratify the contract as made with you under date of May 1, 1902, and signed by Mr. L. O. Hedden for our firm. Yours truly, V. J. Hedden & Sons."

And this was followed by a letter from the appellant dated July 14, 1902, stating:

"We are in receipt of your favor of the 11th confirming and ratifying the contract made between this company and V. J. Hedden & Sons, dated May 1, 1902, and signed by Mr. L. O. Hedden. This letter is satisfactory to our attorney"—and requesting shipping directions, which thereafter followed.

Up to and including September 23d, the appellant shipped under orders from V. J. Hedden & Sons 3,200 barrels of cement, upon which there was due $3,904, for which the vendees had not paid. On October 18, 1902, the appellant wrote to V. J. Hedden & Sons, stating that they were in receipt of a letter of the 15th instant, demanding 21,400 barrels of cement, and threatening to annul the contract, and then continued:

"As you have not paid for the cement delivered to you, we deem both the notice and the annullment of no avail. We could not reasonably be expected to deliver more goods to one who has failed to pay for goods already received; nor can we admit that you can take any advantage of a contract which you have already broken by failure to pay as it requires. * * * Under the circumstances, we have been obliged to rescind our contract with you and to place our claim in the hands of our attorneys for collection."

This was followed, on October 21st, by the commencement of an action against the firm of V. J. Hedden & Sons to recover the contract price for the cement delivered. On the same day, October 21st, V. J. Hedden & Sons remitted to the appellant a draft for $3,904 in payment of the cement delivered, and then demanded the delivery of the remaining cement under the contract. This demand not having been complied with, this action was subsequently commenced, not by V. J. Hedden & Sons, but by Albert S. Moore, claiming that he, the defendant L. O. Hedden, and one B. Sherwood Dunn, were the principals in the contract executed by V. J. Hedden & Sons; that V. J. Hedden & Sons made this contract as their agent; that Dunn had assigned his interest in the contract to the defendant Northampton Portland Cement Company; that the plaintiff had requested the Northampton Portland Cement Company and Hedden to join him in commencing the action, which they had refused to do, and they are therefore made defendants; and asking a recovery of the damages sustained by breach of the contract by the defendant. V. J. Hedden & Sons are not parties to this action, nor is Dunn, who, it is alleged, was originally one of the principals for whose benefit this contract with the appellant was made.

As one of the defenses in this action, the defendant alleged that the contract set forth in the complaint was made with the said firm of V. J. Hedden & Sons in reliance upon the plaintiff's representations that the cement contracted for was for the sole use of V. J. Hedden & Sons in their own building operations at Harrison, N. J., and not otherwise, and that the said plaintiff fraudulently concealed from this defendant the information that the said V. J. Hedden & Sons were acting as agents for the plaintiff and others, as set forth in the complaint. The plaintiff has recovered a verdict against the appellant for the total damages sustained by what was alleged to be a breach of this contract, and upon that verdict judgment in favor of the plaintiff was entered for the full amount of the damages; the other defendants, who were entitled to recover two-thirds of these damages, not being mentioned in the judgment.

The defendant insisted before the court below, and insists upon this appeal, that it was not liable to the plaintiff or to the other members of the so-called syndicate; that it refused to make any contract with the plaintiff or with any other than the firm of V. J. Hedden & Sons; and that, under the circumstances before detailed, the plaintiff, as an undisclosed principal, was not entitled to enforce this contract made by the defendant with V. J. Hedden & Sons. That objection was overruled below, and the first question presented upon this appeal is whether, under the circumstances detailed, the plaintiff can maintain this action.

It is undoubtedly the well-settled general rule that:

"Where an agent enters into a contract as though made for himself, and the existence of a principal is not disclosed, the principal may as a general rule enforce the contract." 1 Am. & Eng. Enc. of Law (2d Ed.) p. 1168; Nicoll v. Burke, 78 N. Y. 580; Milliken v. Western U., 110 N. Y. 403, 18 N. E. 251, 1 L. R. A. 281.

There are, however, exceptions to this general rule. One of these exceptions is stated in the Am. & Eng. Enc. of Law (volume 1 [2d Ed.] p. 1171), as "where a personal trust or confidence is reposed by the other party in the agent who contracted in his own name"; and this is based upon another general principle illustrated by the case of Arkansas Smelting Co. v. Belden Co., 127 U. S. 379, 8 Sup. Ct. 1308, 32 L. Ed. 246, where Mr. Justice Gray, in delivering the opinion of the court, said:

"Every one has a right to select and determine with whom he will contract, and cannot have another person thrust upon him without his consent. In the familiar phrase of Lord Denman: 'You have the right to the benefit you anticipate from the character, credit and substance of the party with whom you contract.'"

And among other cases cited in support of this proposition were Winchester v. Howard, 97 Mass. 303, 305, 93 Am. Dec. 93, and Boston Ice Co. v. Potter, 123 Mass. 28, 25 Am. Rep. 9. This same principle was applied and enforced in N. Y. Bank Note Co. v. Hamilton B. N. Co., 180 N. Y. 280, 73 N. E. 48, where the question arose as to whether a contract was assignable, and the court said:

"Doubtless the general rule is that an executory contract not necessarily personal in its character, which can, consistent with the rights and interests of the adverse party, be sufficiently executed by the assignee, is assignable in the absence of agreement in the contract."

But it was held that that rule did not apply, as the plaintiff, the assignee, was not only technically but substantially a different entity from his predecessor; that the defendant could not be obliged to intrust its money, collected on the sale of the presses, to the responsibility of an entirely different corporation from that with which it had contracted; and the contract could not be assigned to the plaintiff without the assent of the other party to it. Although there was a vigorous dissent from this proposition, it was sustained by a large majority of the court.

We have it thus established that this contract was not assignable by Hedden & Sons to Moore and his associates, and that this appellant could not have been compelled to perform by delivering their cement

to Moore and his associates if they had attempted to assign the contract. The evidence establishes that the appellant had insisted upon making a personal contract with this responsible firm; had refused to deliver the cement under the contract to a corporation which it was understood had been organized to take over the business of the firm of V. J. Hedden & Sons; called attention to the fact that the correspondence had been conducted by one Moore (plaintiff in this action) on behalf of that firm or corporation; and had refused to admit the existence of the contract until it was definitely determined that the party with which it had contracted was the copartnership, to whom it was willing to sell and deliver the cement. It seems to me that this presents an exception to the general rule that an undisclosed principal can enforce a contract made by its agent for its benefit, as presenting a case in which the vendor expressly refused to make a contract with any party except the one of its own selection, and is brought directly within the exception, as stated in Story on Agency (9th Ed.) § 160A, that:

"The principal also will be liable to be sued and entitled to sue in all cases, unless from the attendant circumstances it is clearly manifested that an exclusive credit is given" to the agent.

None of the authorities cited by counsel for the respondent are adverse to this view. There is a clear distinction between this and a case where a party seeks to hold liable an undisclosed principal, to whom he has sold goods through an agent, and who has actually received the goods and applied them to his own use. It cannot be doubted but that the party to a contract who has discovered that the goods were sold to an undisclosed principal may waive his right to refuse to recognize any other party to the contract than the person with whom he has contracted, and insist upon holding responsible the undisclosed principal. But an entirely different question is presented where the party to the contract refuses to recognize an undisclosed principal as a principal, and insists upon holding the party with whom he contracted as the real party to the contract. The proposition is that a party to a contract is entitled to insist that the parties with whom he contracted are the real parties who will perform and enforce the contract, and he is not bound to recognize either an actual assignment of the contract, or, what is its equivalent, an enforcement of the contract by an undisclosed principal upon the ground that the contract was really made for his benefit.

In Taintor v. Prendergast, 3 Hill, 72, 38 Am. Dec. 618, the action was brought to recover a sum of money advanced to the defendant in part payment for a quantity of wool which he agreed to deliver to the plaintiff's agent. It was proved that the money that was advanced was the money of the plaintiff. The contract was not complied with, and the action was brought to recover this money, which the plaintiff through its agent had advanced to the defendant under a contract made between the plaintiff's agent and the defendant. There was no evidence to show that the defendant had refused to contract with the plaintiff, or that the defendant had insisted upon a direct contract with the agent in order to hold him responsible. It was recognized in that case that, if there had been evidence of an exclusive credit given to the agent, the principle would not be applicable.

In Nicoll v. Burke, 78 N. Y. 580, William and E. A. Cruikshank made a lease as agents. The form of the lease shows that they were acting for an undisclosed principal, and the lease in this form was accepted by the tenant. The general rule is stated, but the case not being within the exception to which I have referred, that exception was not discussed.

Coleman v. First Nat. Bank of Elmira, 53 N. Y. 385, was an action against an undisclosed principal to recover a sum of money which had been deposited with the cashier of the bank, and the jury found that the bank was the principal, and that the deposit was with it. In that case, the court said:

"The jury having found that the money was deposited with the bank, the case then in one aspect is that of a depositor taking the personal certificate and obligation of a person who was at the time the chief financial officer and agent of the bank for its repayment. If he did this under circumstances indicating an intention to give the sole credit to Van Campen, knowing, as he did, that the bank was the real principal, then his election would bind him, and he could not subsequently resort to the bank on the insolvency of the agent. ✳ ✳ ✳ If the plaintiff had examined the certificate, he would have been apprised of the fact that it purported to be the individual obligation of Van Campen. But he did not do so. He had a right to suppose that it was the proper acknowledgment of the bank with which the money was deposited."

The case of Ludwig v. Gillespie, 105 N. Y. 653, 11 N. E. 835, was an action brought to recover the purchase price of certain merchandise sold and delivered by the plaintiff to the defendant. The contract was:

"Sold for account of Mr. E. Ludwig, Agt., to Mr. L. C. Gillespie, four thousand (4,000) cases Syrian bitumen."

The plaintiff, when he made this contract, was acting as agent for a firm in France, and the bitumen was sold by him for and on account of this firm in France as their agent. It was held that the action was brought within the principle that, when a contract not under seal is made with an agent in his own name for an undisclosed principal, whether he describes himself as an agent or not, either the principal or agent may sue upon it. Here the agent was allowed to recover.

In Milliken v. Western Union Tel. Co., 110 N. Y. 403, 18 N. E. 251, 1 L. R. A. 281, the action was against a telegraph company to enforce a contract made with plaintiff's agent in Paris, France, for the transmission and delivery of a message, and the defendant secured possession of the message under a contract to procure a delivery of it to the person answering the description at its address in New York. The court there applied the general rule that the principal is entitled to maintain an action under a contract made by its agent with a third party, although the agency is not disclosed at the time of the making of the contract. No fact to bring the case within the exception which we think controls this case was presented, and that exception was not discussed.

We are therefore of opinion that the plaintiff could not maintain this action, and for that reason the judgment and order must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.