KELLY ASPHALT BLOCK CO. v. BARBER ASPHALT PAVING CO.

(Supreme Court, Appellate Division, Second Department.   December 30, 1909.)

1. PRINCIPAL AND AGENT (§ 12*)—ACTION BY UNDISCLOSED PRINCIPAL—PROOF OF AGENCY.
    In an action by an undisclosed principal in a contract of sale for the breach of the seller's implied warranty, the contract employing the agent may be shown by parol, in the absence of any written contract of employment.
    [Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 24; Dec. Dig. § 12.*]

2. PRINCIPAL AND AGENT (§ 143*)—UNDISCLOSED PRINCIPAL—RIGHT TO SUE.
    Under the rule that an undisclosed principal in a contract may sue or be sued on the contract made in the name of his agent, the undisclosed

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

principal in a contract of sale may sue the seller for breach of an implied warranty where the contract has been executed, though the seller would not have made the contract if he had known that the undisclosed principal was the party in interest.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 504; Dec. Dig. § 143.*]

3. SALES (§ 273*)—CONTRACTS—IMPLIED WARRANTY.

A manufacturer contracting for the sale of goods to be manufactured for a particular purpose warrants that the goods are free from latent defects, and are suitable for the particular purpose.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 773, 774; Dec. Dig. § 273.*]

4. SALES (§ 288*)—CONTRACTS—IMPLIED WARRANTY.

Where a manufacturer, who contracted to sell asphalt paving blocks to be manufactured for street paving purposes, delivered blocks not sufficiently compressed for the purpose intended, but the defect could not be discovered by handling or by physical inspection, and custom did not require the buyer before acceptance to subject them to a specific gravity test which would disclose the defect, the buyer was entitled to sue after acceptance for breach of the implied warranty that the blocks should be free from latent defects and suitable for the purpose intended.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 818; Dec. Dig. § 288.*]

5. SALES (§ 288*)—ACCEPTANCE—IMPLIED WARRANTY.

A buyer cannot shut his eyes to defects in the goods, and after acceptance hold the seller to an implied warranty, though every party to a contract may rely to some extent on performance by the other party.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 818; Dec. Dig. § 288.*]

6. SALES (§ 288*)—IMPLIED WARRANTY—ACCEPTANCE—EFFECT.

The implied warranty arising on the sale of goods to be manufactured by the seller does not survive acceptance where a defect in the goods is discoverable on customary and ordinary inspection.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 818; Dec. Dig. § 288.*]

7. PRINCIPAL AND AGENT (§ 189*)—UNDISCLOSED PRINCIPAL—ACTIONS—COMPLAINT.

The undisclosed principal suing the seller for breach of implied warranty need not allege the agency of the third person with whom the seller made the contract of sale.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 713; Dec. Dig. § 189.*]

Appeal from Trial Term, Kings County.

Action by the Kelly Asphalt Block Company against the Barber Asphalt Paving Company. From a judgment dismissing the complaint at the close of plaintiff's case, it appeals. Reversed, and new trial granted.

The parties to this action were competitive bidders for a contract to repave with asphalt blocks the roadway of Broadway from Havemeyer street to Lafayette avenue, in the borough of Brooklyn. The contract was awarded the plaintiff by resolution of the board of estimate on the 19th of July, 1905, and was executed by the parties on the 21st of August, 1905. The plaintiff, wishing to purchase the necessary blocks of the defendant and fearing that the latter would not sell directly to it, procured one Booth to purchase them, and he entered into correspondence with the defendant for that purpose. Before accepting his order, the defendant requested him to indicate the streets upon

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

which the blocks were to be used, and, in reply, he wrote that they were to be used on Broadway, Williamsburg, saying: "The Interstate Co. was low, but the work was awarded to us." Reports of the awarding of contracts for which it bid were received in the usual course by the defendant at its Philadelphia office within two or three days thereafter. After being informed where the blocks were to be used, the defendant accepted the order, and later delivered the blocks pursuant to it. As soon as laid, the blocks began to crumble, and it became necessary for the plaintiff to remove them and resurface the street with sheet asphalt. The plaintiff's evidence tended to show that the blocks conformed to the specifications prescribed by the city in so far as their composition was concerned, but that their compression was below that of other blocks sold by the defendant at about the same time and was insufficient to insure durability, which was due to some defect in the process of manufacture, and was discoverable by testing the blocks for specific gravity. The warranty alleged in the complaint was that the blocks should be fit and proper for the purpose intended, and the same in size, character, composition, and durability as the blocks commonly manufactured and sold by the defendant and known to the trade as the "Barber Asphalt Blocks."

Argued before HIRSCHBERG, P. J., and JENKS, WOODWARD, BURR, and MILLER, JJ.

Edward M. Grout (James F. McKinney, on the brief), for appellant.
L. Laflin Kellogg (Franklin Nevius, on the brief), for respondent.

MILLER, J. The following questions were presented by the motion to dismiss: (1) Did the evidence tend to show that Booth was the plaintiff's agent? (2) Though the agency of Booth were established, could the plaintiff recover for breach of warranty collateral to a contract made in his name? (3) Was there evidence tending to show a breach of warranty which survived acceptance of the blocks? (4) Was it necessary to plead the agency of Booth?

1. The court excluded evidence to show the conversation between the president of the plaintiff and Booth resulting in the employment of the latter to purchase the blocks. The contract of employment was the fact to be proven, and, in the absence of a writing, could be shown only by proving the verbal arrangement. Moreover, there was evidence in the record tending to show that Booth acted as agent, but it is unnecessary to consider that evidence for the reason that the improper exclusion of evidence to show the agency requires a reversal of the judgment unless the defendant was entitled to a dismissal, although the fact of agency be deemed established.

2. The defendant does not question the general rule that an undisclosed principal may sue or be sued on a contract made in the name of his agent (see Henderson, Hull & Co. v. McNally, 48 App. Div. 134, 62 N. Y. Supp. 582, affirmed on opinion below 168 N. Y. 646, 61 N. E. 1130, and cases cited in the opinion of Mr. Justice McLaughlin), but contends that this case falls within the exception for the reason that the element of personal confidence and trust is involved, that the defendant sold upon the personal responsibility of Booth, and, as a matter of fact, would not have contracted with the plaintiff. The circumstances referred to in the above statement of facts would justify the inference that the defendant knew when it accepted the order that the plaintiff was the contractor to whom the blocks were to be furnished, and that Booth was acting as its agent. No doubt the plaintiff

desired to conceal from the defendant the fact that it was the principal in the transaction, but that does not prove that it succeeded in so doing. There is nothing to show that the defendant had ever refused to sell blocks to the plaintiff, and it could not be decided as a matter of law on the record before us that it was not willing to do so. Moreover, I think that the plaintiff may maintain the action, though Booth's agency was unknown to the defendant. If the defendant sold the blocks on Booth's credit, it could, if it chose, look to him for payment, and no doubt the plaintiff's action would be subject to any equities in favor of the defendant arising from the fact that it had dealt with Booth as the principal. The fact that the defendant would not have made the contract if it had known who the principal was, if that be the fact, would have justified it in refusing to perform upon learning the truth; but, having executed the contract, the defendant should not be permitted to escape liability thereon in the absence of evidence to show that it has been prejudiced by having dealt with an agent as principal. Of course, the plaintiff cannot maintain the action unless there was a contract relation between it and the defendant. But the case above cited is sufficient authority for the proposition that there is a contract relation between an undisclosed principal and one who contracts with his agent. The respondent relies upon the case of Moore v. Vulcanite Portland Cement Co., 121 App. Div. 667, 106 N. Y. Supp. 393, but that was a suit by an undisclosed principal for breach of an executory contract. The reason for that decision cannot apply to the case of an executed contract. The case of Boston Ice Company v. Potter, 123 Mass. 28, 25 Am. Rep. 9, does support the respondent's contention. It seems to me that it is plainly opposed to the doctrine of the decisions of the Court of Appeals of this state, hereinbefore referred to. If the undisclosed principal cannot sue a vendor on an executed contract, the latter might escape liability for the grossest fraud by asserting that it would not have sold to the former, unless in such case the action could be maintained by the agent, and the undisclosed principal could in turn compel the agent to account for the result of such suit. But, even if such circuity of action were permissible, a single, direct action by the real party in interest would seem to be the one contemplated by our system of procedure.

3. The court restricted the plaintiff to proof that the blocks furnished were not equal to the standard Barber blocks manufactured and sold by the defendant. It must not be overlooked that the contract was for the sale of blocks to be manufactured by the defendant, and that the evidence justified a finding that the defendant knew the purpose for which they were to be used. It is unnecessary to cite authority on the proposition that under such circumstances there is an implied warranty by the manufacturer that the article is free from latent defects and suitable for the purpose intended. The respondent contends that it was required to furnish only blocks which complied with the city specifications. But the specifications were silent on the subject of the compressions required. I think that the complaint is broad enough to present the question, and that the court erred in limiting proof to comparisons with other blocks manufactured by the defendant. However, as thus limited, there was evidence to show that,

owing to some defect in the process of manufacture, the blocks were not sufficiently compressed as compared with other blocks sold by the defendant, and that, owing to that fact, they commenced to crumble immediately upon use. However, it is asserted that the warranty did not survive acceptance. The blocks were composed of the proper materials, mixed in the proper proportion. No defect could be discovered by handling or by visual inspection. Indeed, a chemical analysis would not have disclosed the defect. The compression of the blocks was indicated, however, by their specific gravity; and the test for specific gravity is simple. The respondent asserts in its brief that it was customary to make such a test, but the evidence on that head refers to the test made by the city engineer of sample blocks furnished by bidders. The evidence is that the specific gravity of these blocks varied, and there is no evidence that it is customary for contractors to subject blocks to the test for specific gravity before laying them. It appears that during the progress of the work city inspectors from time to time took blocks to the city expert who discovered that they were low in specific gravity and communicated that fact to the city engineer, but there is no evidence that that was brought to the knowledge of the plaintiff. A purchaser cannot shut his eyes to defects, and, after acceptance, hold the seller to an implied warranty. But every party to a contract has a right to rely to some extent upon performance by the other party. There is some evidence in this case tending to show that the low compression of the blocks was due to some trouble with the machinery with which they were manufactured. The defendant, the manufacturer, may have had reason to test the blocks for specific gravity, but the plaintiff was not called upon to do so unless that was customary. As the blocks appeared to be all right on examination, the plaintiff was not required to subject them to every known test, but, after the usual examination, could accept them, relying upon the manufacturer having performed its contract. It is elementary that the implied warranty arising upon the sale of articles to be manufactured does not survive acceptance in the case of a defect discoverable upon inspection; but by inspection is meant the customary and ordinary inspection. Carleton v. Lombard, Ayres & Co., 149 N. Y. 137, 43 N. E. 422; Bierman v. City Mills Co., 151 N. Y. 482, 45 N. E. 856, 37 L. R. A. 799, 56 Am. St. Rep. 635; Waeber v. Talbot, 167 N. Y. 48, 60 N. E. 288, 82 Am. St. Rep. 712. If it had appeared that it was customary for contractors to test blocks for specific gravity before laying them, a different question would be presented.

4. It was not necessary to allege the agency of Booth, as only ultimate facts should be pleaded. The case of Buffalo Catholic Institute v. Bitter, 87 N. Y. 250, cited by the respondent, does not decide to the contrary. In that case the complaint set out in hæc verba an agreement under seal made by the agent in his own name, and the other averments of the complaint were held to be averments of the legal effect of that instrument.

The judgment should be reversed, and a new trial granted, costs to abide the event. All concur.