**In the Matter of the Arbitration between**
**INTERBRAS CAYMAN CO.,**
**Petitioner,**

v.

**ORIENT VICTORY SHIPPING CO.,**
**S. A., Respondent.**

**No. 80 Civ. 5311.**

United States District Court,
S. D. New York.

March 12, 1981.

**1068**

Paul S. Aufrichtig, New York City, for petitioner.

John D. Kimball, Healy & Baillie, New York City, for respondent.

### MEMORANDUM AND ORDER

WHITMAN KNAPP, District Judge.

On October 12, 1979, respondent Orient Victory Shipping, S.A. ("Orient"), as "Owners", entered into a charter agreement with Frota Oceanica Brasileira, S.A. ("Frota"), as "Charterers", for the vessel Orient Victory. The charter party contained a standard arbitration provision. That same day, Frota, as "Owners", entered into a virtually identical agreement with petitioner Interbras Cayman Company ("Interbras"), as "Char-

terers", for the Orient Victory. Also on that date, Frota and Interbras executed a supplemental agreement ("supplemental agreement") providing that with regard to the charter party between them, Frota was "to be free of any responsibility whatsoever". Thereafter, by letter dated June 4, 1980 Frota assigned to Interbras "all the rights" Frota might have had against Orient pursuant to the Orient-Frota charter party, "including the right to arbitrate" in Interbras' own name.

According to both of these charter parties, the Orient Victory was chartered to transport a shipment of pig iron from Vitoria, Brazil to Karachi, Pakistan. On June 20, 1980 Interbras served Orient with a demand to arbitrate a claim of $73,500 "representing a loss incurred by [Interbras] by reason of a claim of short-shipment alleged by Pakistani consignees of the cargo on board the 'ORIENT VICTORY'." According to Interbras, Orient failed to respond to said demand. On September 18, 1980, Interbras filed in this court a petition for an order designating an arbitrator for Orient. In the petition and in the subsequent motion papers presently before us, Interbras alleges that the damages it was claiming are "properly the obligation of the owner."

In opposing the petition, Orient argues that by virtue of the June 4, 1980 letter, Interbras is merely an assignee of Frota and could only assert against Orient such rights as Interbras might have against Frota; that in view of the October 12, 1979 supplemental agreement between Interbras and Frota, Interbras was barred from asserting any claims against Frota; and that consequently Orient was under no duty to enter into arbitration with Interbras.

The dispositive question before us is whether Frota, in entering into the charter party with Orient, did so as agent for an undisclosed principal, i. e., Interbras, or whether it acted as a principal in its own right and subsequently sub-chartered the Orient Victory to Interbras.

In the latter event, Interbras would have no direct contractual relationship with Orient and, being barred by the supplemental

agreement from asserting any claims against Frota, it could not assert any such claims against Orient, or compel Orient to enter into arbitration proceedings.

On the other hand, the law is clear that if Frota entered into the charter agreement with Orient as agent for Interbras, regardless of whether or not Orient was aware of such an agency, Interbras, as undisclosed principal, would be able to enforce in its own name all of Frota's rights under the Orient-Frota charter party.

■ It is firmly established that "[a] contract not under seal, made in the name of an agent as ostensible principal, may be sued on by the real principal at the latter's election." *Kelly Asphalt Block Company v. The Barber Asphalt Paving Company* (1914) 211 N.Y. 68, 70, 105 N.E. 88. See also *The New Jersey Steam Navigation Company v. Merchants' Bank of Boston* (1848) 47 U.S. (6 How.) 344, 380–81, 12 L.Ed. 465, 481; *Ford v. Williams* (1858) 62 U.S. (21 How.) 287, 290, 16 L.Ed. 36, 38; *Baldwin v. Bank of Newbury* (1864) 68 U.S. (1 Wall.) 234, 241, 17 L.Ed. 534, 536; *Nash v. Towne* (1867) 72 U.S. (5 Wall.) 689, 704, 18 L.Ed. 527, 530; *Higgins v. McCrea* (1886) 116 U.S. 671, 680, 6 S.Ct. 557, 561, 29 L.Ed. 764, 767; *Buchanan v. Cleveland Linseed-Oil Co.* (2d Cir. 1898) 91 F. 88; *Morris v. Chesapeake & O. S. S. Co.* (S.D.N.Y.1903) 125 F. 62, 66, *affirmed* (2d Cir.) 148 F. 11, *cert. denied* 203 U.S. 592, 27 S.Ct. 781, 51 L.Ed. 331; *International Minerals & Chemical Corporation v. M/V Achilleus* (S.D.N.Y.1971) 1971 A.M.C. 1161, 1162. Furthermore, an undisclosed principal may enforce such a contract made for its benefit "even though the respondent did not know there was an undis-

closed principal." *Morris v. Chesapeake & O. S. S. Co., supra,* 125 F. at 66. Thus, then Judge Cardozo observed in *Kelly Asphalt Block Company, supra,* 211 N.Y. at 72, 105 N.E. 88, that if a contract does not fail "for want of parties to sustain it, the unexpected existence of an undisclosed principal can supply no ground for the avoidance of a contract unless fraud is proved."[1] Consequently, there can be no question "that an undisclosed principal may enforce the arbitration agreement in a charter party signed on its behalf by an authorized agent." *Philippine Bulk Shipping, Inc. v. International Minerals & Chemical Corp.* (S.D.N.Y. 1973) 376 F.Supp. 654, 656. See also *International Minerals & Chemical Corporation v. M/V Achilleus, supra.*

■ It is also firmly established that the court may look beyond the four corners of a written agreement to determine whether or not one of the parties thereto was acting as agent for an undisclosed principal.

"The contract of the agent is the contract of the principal, and he may sue or be sued thereon, though not named therein; and notwithstanding the rule of law that an agreement reduced to writing may not be contradicted or varied by parol, it is well settled that the principal may show that the agent who made the contract in his own name was acting for him. *This proof does not contradict the writing; it only explains the transaction.*" *Ford v. Williams, supra,* 62 U.S. (21 How.) at 290, 16 L.Ed. at 38. (Emphasis supplied.) See also *Baldwin v. Bank of Newbury, supra,* 68 U.S. (1 Wall.) at 241, 17 L.Ed. at 536; *Nash v. Towne, supra,* 72 U.S. (5 Wall.) at 704, 18 L.Ed. at 530.

1. This rule is not absolute. In *Akwell Corporation v. Eiger* (S.D.N.Y.1956) 141 F.Supp. 19, 22, the court observed:

"There is an exception to the general rule that an undisclosed principal may enforce a contract made on his behalf where the contract involves a confidential relationship between the third party and the agent. *Navarre Hotel and Importation Company v. American Appraisal Company,* 156 App.Div. 795, 142 N.Y.S. 89; *Moore v. Vulcanite Portland Cement Co.,* 121 App.Div. 667, 106 N.Y.S. 393. However, where there is no evi-

dence to show that the third party had previously refused to contract with the principal or that the third party had insisted upon a direct contract with the agent only, the fact that the third party thereafter states that he would not have entered into the contract if he had known that the undisclosed principal was the party in interest is no defense to the principal's right to maintain an action as the real party in interest. *Kelly Asphalt Block Company v. Barber Asphalt Paving Company,* 136 App.Div. 22, 120 N.Y.S. 163."

In light of all the circumstances in the case before us, we conclude that in fact Frota acted as Interbras' agent in entering into the Orient-Frota charter party, and that Interbras may therefore enforce the arbitration agreement contained therein. However, in view of the fact that the principal-agent issue has not been litigated by the parties,[2] respondent Orient may, on ten (10) days notice, on or before March 25, 1981, submit papers supported by appropriate affidavits to contest this issue.

In the event that Orient chooses not to submit further papers in this matter, or if it fails to persuade us to alter our present view of the case, Orient will be directed to appoint an arbitrator in accordance with Interbras' petition. If no further papers are submitted by Orient by March 25, 1981, petitioner Interbras is to submit an appropriate order on five (5) days notice.

SO ORDERED.

---

2. It is clear that the issue of whether or not Interbras was a principal of Frotas and is consequently entitled to enforce the arbitration provision of the Orient-Frota charter party is for the court to decide, and not for the arbitrators. See *Philippine Bulk Shipping, Inc. v. International Minerals & Chemical Corp., supra,* 376 F.Supp. at 656.