(156 App. Div. 795.)

NAVARRE HOTEL & IMPORTATION CO. v. AMERICAN APPRAISAL CO.

(Supreme Court, Appellate Division, First Department.   May 29, 1913.)

1. PRINCIPAL AND AGENT (§ 143*)—UNDISCLOSED AGENCY—RIGHTS OF PRINCIPAL.

A principal may sue upon a contract not under seal, made by his agent with a third person, although the agency was not disclosed when the contract was made.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 502–512;  Dec. Dig. § 143.*]

2. PRINCIPAL AND AGENT (§ 143*)—UNDISCLOSED AGENCY—LIABILITY OF THIRD PERSON—PERSONAL CONFIDENCE IN AGENT.

There is an exception to the general rule that a principal may enforce a contract made on his behalf, though the agency be undisclosed, where personal confidence is reposed by the other party in the agent who contracts in his own name.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 502–512;  Dec. Dig. § 143.*]

3. PRINCIPAL AND AGENT (§ 143*)—UNDISCLOSED AGENCY—RIGHT OF PRINCIPAL.

Where an appraisal company made an appraisal of personal property for a firm of attorneys, knowing that the appraisal was to be used as the basis for a chattel mortgage, such employment is not accepted by them by reason of any trust or confidence on their part in the attorneys, and the company is liable to the undisclosed principal for damages caused by a negligent appraisal of the property.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 502–512;  Dec. Dig. § 143.*]

4. EVIDENCE (§ 113*)—VALUE—SALE AT PUBLIC AUCTION.

The price at which goods sell at a public auction is some evidence of their value.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 259–296;  Dec. Dig. § 113.*]

5. MASTER AND SERVANT (§ 66*)—NEGLIGENT PERFORMANCE OF SERVICE—EVIDENCE.

Evidence *held* sufficient to justify a jury in finding that the loss sustained by the plaintiff who had accepted a chattel mortgage based upon an appraisal of personal property by the defendant was due to the negligence of the defendant.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 74;  Dec. Dig. § 66.*]

Ingraham, P. J., dissenting.

Appeal from Trial Term, New York County.

Action by the Navarre Hotel & Importation Company against the American Appraisal Company.   Judgment for the defendant, and plaintiff appeals.   Reversed, and new trial ordered.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Lloyd M. Howell, of New York City, for appellant.
Charles Blandy, of New York City, for respondent.

McLAUGHLIN, J.   In January, 1909, one Gibbs was indebted to the plaintiff, a domestic corporation, in the sum of $1,590, which he

was unable to pay. He had in his rooms in the plaintiff's hotel certain furniture, bric-a-brac, paintings, and other personal property, upon which he offered to give a chattel mortgage to obtain an extension of the time within which payment might be made and to secure the payment thereof. It was finally agreed between them that Gibbs should transfer such property to his wife, by bill of sale; that she should assume the debt, and give a mortgage upon so much of the property as would secure the payment thereof. The plaintiff had no knowledge of the value of such property and, acting through its attorneys, employed the defendant, a foreign corporation holding itself out as an expert on the subject of appraising personal property, to appraise the property and select so much of it as would secure the plaintiff's claim and make a written report thereof. It selected certain designated pieces, upon which it placed a value, the aggregate of which amounted to $3,922. In the written report submitted as to such value, it stated:

"The prices of these objects are based on a conservative view and should this property ever be sold to dealers or at auction a spirited public will bring twice the amount that our appraisal shows."

For making the appraisal and submitting the report, the defendant charged $50 which was paid. The plaintiff, relying upon the report, took a chattel mortgage upon the pieces mentioned therein from Mrs. Gibbs—title in the meantime having been transferred to her—released Mr. Gibbs, and extended the time of payment of the indebtedness for one year. After the execution of the chattel mortgage, the plaintiff took the property covered thereby into its possession and retained the same until the extension of the time for payment had expired, when, nothing having been paid, it proceeded, acting through the same attorneys, to sell. Before offering the property for sale, however, the attorneys consulted with the defendant as to the best method to be pursued and were advised that the goods be first advertised at private sale. This was done, but without success, and they were then turned over to a reputable auctioneer to be sold at public auction. This was done, due notice having been given, and the net amount realized upon such sale, upon the property which had been appraised at $3,922, was $131.97. Action was then brought against Mrs. Gibbs and judgment secured against her for the balance, upon which execution was issued and returned wholly unsatisfied. Thereupon this action was brought to recover from the defendant the difference between the amount of the indebtedness and the amount realized on the sale, with interest, on the ground that such loss was due to its negligence in making the appraisal.

At the trial the plaintiff established the foregoing facts, and also proved by a witness whose testimony was not questioned that the actual value of the property appraised by the defendant did not exceed $300, and that some of the property which the defendant did not think it necessary to include in what was selected for the plaintiff was subsequently sold for $800. The trial court, at the conclusion of plaintiff's case, dismissed the complaint on the ground that the plaintiff did not employ the defendant to make the appraisal and therefore it was not in a position to complain of its negligent performance of the con-

tract. It is true the defendant was not employed directly by the plaintiff, but it was through its agent, and the fact that the principal for whom the agent acted was not disclosed at the time the contract of employment was entered into did not release it from liability.

[1] It is elementary that a principal is entitled to maintain an action upon a contract not under seal, made by his agent with a third person, although the agency is not disclosed at the time the contract is made. If the agent possesses authority to make a written contract not under seal, and makes it in his own name, the principal, whether known or unknown, may be made liable, and he, in turn, is entitled to the benefit of the contract and may sue thereon. Nicoll v. Burke, 78 N. Y. 580; Brady v. Nally, 151 N. Y. 258, 45 N. E. 547; Henderson, Hull & Co. v. McNally, 48 App. Div. 134, 62 N. Y. Supp. 582, affirmed on opinion below, 168 N. Y. 646, 61 N. E. 1130; Kelly Asphalt Block Co. v. Barber Asphalt Paving Co., 136 App. Div. 22, 120 N. Y. Supp. 163. Referring to this rule, Judge Andrews, in Briggs v. Partridge, 64 N. Y. 357, 21 Am. Rep. 617, said:

"A principal may be charged upon a written parol executory contract entered into by an agent in his own name, within his authority, although the name of the principal does not appear in the instrument, and was not disclosed, and the party dealing with the agent supposed that he was acting for himself, and this doctrine obtains as well in respect to contracts which are required to be in writing, as to those where a writing is not essential to their validity."

And the Presiding Justice of this court, in Moore v. Vulcanite Portland Cement Co., 121 App. Div. 667, 106 N. Y. Supp. 393, said:

"It is undoubtedly the well-settled general rule that where an agent enters into a contract as though made for himself, and the existence of a principal is not disclosed, the principal may, as a general rule, enforce the contract."

[2] There are, however, exceptions to the general rule, one of which is where a personal trust or confidence is reposed by the other party in the agent who contracted in his own name. Am. & Eng. Enc. of Law (2d Ed.) vol. 1, p. 7. This rule is predicated upon the right which every one has to select and determine for himself the skill, reputation, and ability of the one with whom he contracts. New York Bank Note Co. v. Hamilton Bank Note Co., 180 N. Y. 280, 73 N. E. 48; Arkansas Smelting Co. v. Belden Co., 127 U. S. 379, 8 Sup. Ct. 1308, 32 L. Ed. 246; Winchester v. Howard, 97 Mass. 303, 93 Am. Dec. 93.

[3] But there is nothing here to take the case out of the general rule or bring it within any of the exceptions to which my attention has been called. The attorneys who employed the defendant were, concededly, acting for the plaintiff, and there is nothing in the record to show, or even suggest, that the employment would not have been accepted as readily if defendant had, in fact, known for whom it was to render the service. The employment was not accepted by defendant by reason of any personal trust or confidence in the attorneys.

[4, 5] The price at which the goods sold at public auction was some evidence to be considered by the jury in arriving at their value. Campbell v. Woolworth, 20 N. Y. 499; Matter of Johnston, 144 N. Y. 563,

39 N. E. 643; Parmenter v. Fitzpatrick, 135 N. Y. 190, 31 N. E. 1032; Latimer v. Burrows, 163 N. Y. 7, 57 N. E. 95. Besides, the plaintiff proved by other evidence that the total value of the goods did not exceed $300, and that the articles which the defendant failed to include in the list appraised were, subsequent to the appraisal, sold for $800. Defendant, as stated, offered no evidence. The jury therefore would have been justified in finding that the loss which the plaintiff sustained was due to the negligence of the defendant.

The judgment appealed from, therefore, is reversed, and a new trial ordered, with costs to appellant to abide event.

CLARKE, SCOTT, and LAUGHLIN, JJ., concur.

INGRAHAM, P. J. (dissenting). On January 18, 1909, Goller, Shaffer & Eisler, a firm of lawyers in the city of New York, wrote a letter to the defendants, as follows:

"Gentlemen: Kindly make an appraisal of the property of Dr. J. W. Gibbs situated in room 618 of the Hotel Navarre. Dr. Gibbs is indebted to us to the extent of $1,530.07 and has agreed to give us a chattel mortgage on his furniture and effects sufficient to cover this. You are to give us an appraisal of a sufficient amount in your judgment to secure this indebtedness of Dr. Gibbs."

At the time this letter was written there was no statement to the defendants that this firm was acting for plaintiff or in a representative capacity. In reply to this letter on January 20, 1909, the defendants addressed a letter to the law firm stating that according to their request they had made an appraisal of the property of Dr. J. W. Gibbs situated in room 618 of the Hotel Navarre, "the total amount of which is sufficient to cover his indebtedness to you." The complaint alleged that Goller, Shaffer & Eisler were the attorneys, agents, and representatives of the plaintiff; that the said Gibbs was indebted to the plaintiff in the sum of $1,590 and was the owner of certain furniture, bric-a-brac, paintings, and other personal property situated in the apartment occupied by the said Gibbs in the Hotel Navarre; that the plaintiff duly informed the defendant of the facts alleged and entered into an agreement with defendant, whereby the defendant agreed to examine and appraise the personal property and to report to the plaintiff the true market value thereof; that on January 19, 1909, the defendant, in pursuance of the agreement, proceeded to appraise the said personal property, but wholly failed to exercise the usual and ordinary care, skill, diligence, prudence, ability, and industry used by appraisers in such matters in making the said appraisal, and negligently, to the damage of the plaintiff, selected and appraised only a small part of the said personal property, to wit, the articles set forth in a schedule annexed to the complaint, and reported the value thereof to the plaintiff as $3,922, whereas, in fact the same was worth only the sum of $170.85; that the plaintiff, relying upon the appraisal and report made by the defendants, and believing that the defendant had used, on behalf of the plaintiff, the usual and ordinary care, diligence, and prudence used by appraisers in such matters, and that the aforesaid selection and appraisal made by the defendant was carefully and

skillfully made, and that the personal property selected by the defend-ant was of the value of $3,922, duly accepted the offer made by Gibbs and refrained from bringing suit against him and accepted a chattel mortgage on the property appraised, and in pursuance of the said offer the plaintiff did discharge and release the said Gibbs from the said indebtedness and obligation to the plaintiff; that the plaintiff sub-sequently obtained a judgment against Mary E. Gibbs, who gave the chattel mortgage, the wife of Dr. J. W. Gibbs, but had been unable to collect the amount of the judgment on execution; and that, if defend-ant had duly, prudently, diligently, carefully, and in accordance with the usual custom and course of business of appraisers, performed its duty arising under and by virtue of the agreement, and had so made the selection of sufficient of the personal property of the said Gibbs, amply to secure plaintiff for the payment of the indebtedness, which defendant had agreed to do, the plaintiff would have been amply se-cured for the payment of the said indebtedness and would have real-ized and collected the full amount of said indebtedness secured by said mortgage; but that by reason of the aforesaid negligent failure of the defendant to perform its duty as aforesaid, the plaintiff had suffered damage in the sum of $1,453.03.

The action, therefore, is to recover for the damages sustained by plaintiff by reason of the unskillful performance of the duty that de-fendant undertook to perform under its employment by a firm of lawyers, and the question squarely presented is whether plaintiff, who made no contract with the defendant and who had not employed the defendant to perform any service for it, can recover for the negligent performance of the duty, which defendant undertook to perform for this firm of lawyers. The action is based upon negligence, i. e., neg-ligent performance of a duty and not for a breach of a contract.

In Savings Bank v. Ward, 100 U. S. 195, 25 L. Ed. 621, the ques-tion was presented whether a lawyer was responsible to a party who had not employed him, but who relied upon a certificate he had given to another person that such third person had good title to real prop-erty, which the third party had pledged to plaintiff as security for a loan of money. The court, in deciding the lawyer was not responsible, said:

"It is not pretended by the plaintiffs that they ever employed the defendant to examine the title to the lot, and it appears that the report was made at the sole request of the claimant of the lot, without any knowledge on the part of the defendant as to the purpose for which it was obtained. All that is con-ceded by the plaintiffs; but they gave evidence to show that the claimant of the lot presented the certificate to certain brokers and employed them to negotiate a loan upon the property in his favor * * * on the faith of that certificate."

The court, adopting the principle established in Fish v. Kelley, 17 C. B. H. S. 194, held that the attorney was not liable; it there being held that there must be privity of contract between the parties to jus-tify a recovery, and further citing the opinion of Beasley, C. J., in Kahl v. Love, 37 N. J. Law, 5, that:

"The limit of the doctrine relating to actionable negligence is that the per-son occasioning the loss must owe a duty, arising from contract or otherwise, to the person sustaining such loss."

In conclusion the court said:

"Suffice it to say these parties never met, and there was no communication of any kind between the defendant and the brokers, or the lenders of the money. Nothing of the kind is pretended; the only suggestion in that direction being that it may be held that the application for the loan, when he employed the defendant, may be regarded as the agents of the plaintiffs. Such suggestion, being entirely without evidence to support it, is entitled to no weight, especially as it appears that the principal certificate was procured several days before any interview upon the subject of the loan took place between the brokers and the plaintiffs."

I do not find that the principle established in this case has been questioned in this state, and although, of course, it is conceded that an undisclosed principal can maintain an action on a contract not under seal, made on his behalf, although the principal is not disclosed, there are exceptions to that rule, to which attention was called in Moore v. Vulcanite Portland Cement Co., 121 App. Div. 667, 106 N. Y. Supp. 393, which was generally based upon the principle stated by Mr. Justice Gray, in Arkansas Smelting Co. v. Belding Co., 127 U. S. 379, 8 Sup. Ct. 1308, 32 L. Ed. 246:

"Every one has a right to select and determine with whom he will contract, and cannot have another person thrust upon him without his consent. In the familiar phrase of Lord Denman, 'You have a right to the benefit you anticipate from the character, credit, and substance of the party with whom you contract.' Humble v. Hunter, 12 Q. B. Ad. & El. 310."

Here the defendant was employed by a firm of lawyers to make an estimate or appraisal of certain personal property for them; the defendant had no contract relation with the plaintiff, did not undertake to work for the plaintiff in any capacity, gave no certificate to the plaintiff as to the appraisal; and the person, with whom defendant did contract, has suffered no damage by reason of any error or negligence of the defendant. Because the plaintiff was willing to rely upon the appraisal given by the defendant, with whom it had no contract relation, does not justify the plaintiff in holding the defendant liable for negligence or the breach of an implied contract with defendant's employers that they would exercise reasonable care and skill in making the appraisal.

I therefore think this judgment should be affirmed.