OPINION OF THE COURT
David B. Saxe, J.
The issue presented here is whether a museum (here, the Metropolitan Museum of Art) may be liable on account of its curator’s allegedly negligent appraisal of a piece of artwork to an individual, who, unbeknownst to the curator or museum, was not the actual owner of the artwork, but rather the consignee who initially purchased the work for resale, purportedly in reliance upon the curator’s alleged negligent statements as to the artwork’s authenticity and value.
The plaintiff has sued to recover a balance claimed to be owed upon a contract to purchase a sculpture, as well as upon a promissory note and check executed in connection with this purchase by the defendants Erving Wolf, Daniel Wolf and Daniel Wolf, Inc. The defendant, Metropolitan Museum of Art (Museum) although not a signatory to the note or check, is also named as a defendant on the contract related claims.
In January 1982 Lewis Sharp, the curator of the American Wing for the Metropolitan Museum of Art, was contacted by an *1032 art dealer, Mr. Victor Wiener, and was told that Mr. Wiener was showing a work created by the sculptor, Elie Nadelman entitled “La Femme Assise”, on behalf of the plaintiff which he thought the Museum might be interested in acquiring. On February 2, 1982, Sharp viewed the sculpture.
Sharp contends that after viewing the sculpture, he relayed to Mr. Wiener that the Museum would not be able to purchase the artwork, in part because the procedure for acquisitions followed by the Museum would take much longer than the time in which the plaintiff wanted to sell the sculpture, but that he would contact some private collectors who he thought might be interested in acquiring it. He contends that at no time did plaintiff ask him to render any appraisal, as to either the authenticity or the value of the sculpture. He thereafter contacted the Wolfs, private collectors who viewed the sculpture and agreed to purchase it for $120,000. On February 11, 1982, the Wolfs paid plaintiff $15,000 and executed a promissory note for the balance of $105,000 payable February 16, 1982. These defendants also gave plaintiff a check for the same amount also dated February 16,1982. The $105,000 has never been paid and the plaintiff has sued the defendants, including the Museum, asserting various causes of action for breach of contract and for payment of the promissory note and the check.
The plaintiff contends that the Museum is liable as a party to the contract, although neither the promissory note nor the check was signed by it, because it was his understanding as communicated to him by Wiener, that the Museum was the real party who was actually acquiring the sculpture with payment to be made by the Museum’s benefactors, collectively denominated the Wolfs. Thus, the plaintiff contends that neither Erving nor Daniel Wolf ever offered to purchase the sculpture individually, but rather throughout all negotiations and transactions, it was understood that the Museum was purchasing the sculpture as a joint venture along with the Wolfs. Based on this theory of a “joint venture”, the plaintiff contends that the Museum as well as the Wolfs are liable on the first three causes of action predicated on contract (count 1), on the promissory note (count 2) and on the dishonored check (count 3). He also seeks attorneys’ fees in accordance with the terms of the contract (count 6). As an alternative cause of action against the Museum, the plaintiff states that the Museum, at the request of the plaintiff, appraised the sculpture and advised the plaintiff that the sculpture was the genuine work of Elie Nadelman entitled “La Femme Assise”; that in reliance on said appraisal plaintiff purchased the sculpture believing it to be authentic; and that by *1033 reason of the foregoing, if the sculpture is not authentic, then the Metropolitan Museum of Art acted negligently in its appraisal causing plaintiff to sustain damages of at least $100,000.
The Museum has moved for summary judgment on each of these causes of action. Thus, any liability of the Wolfs to the plaintiff is not in issue on this motion.
I conclude that the facts do not support any liability predicated on contract law as against the Museum. First, there is no writing indicating any such agreement to purchase the sculpture by the Museum as required by UCC 2-201 (1). Second, and most important, the facts as alleged do not support the conclusion that the Museum had promised to purchase the sculpture or that the plaintiff could, at any time, reasonably conclude that he could look to the Museum for payment. The plaintiff’s theory of a collective agreement by the defendants based on a joint venture or principal and agent law as a vehicle for liability against the Museum is unsubstantiated and untenable. While the plaintiff accurately states the law with respect to the liability of joint venturers, the facts here support only the conclusion that the Museum’s curator initially viewed the sculpture and introduced the Wolfs to the plaintiff. The fact that the parties may have intended for the sculpture to be on display at the Museum or that the Wolfs are regular benefactors of the Museum, having a gallery at the Museum named the Erving and Joyce Wolf Gallery in their honor, do not strengthen plaintiff’s theory of contract liability against the Museum. Since I hold that no joint venture or principal-agent relationship existed as between the Museum and the Wolfs with regard to the purchase of the sculpture, summary judgment must be granted to the Museum dismissing not only the contract cause of action, but also the causes of action based on the promissory note and the dishonored check since the Museum was not a signatory to those instruments. Nor is the Museum liable to the plaintiff for legal fees under the agreement which it was not a party to and accordingly the Museum is granted summary judgment dismissing the cause of action seeking legal fees.
The assertion of a cause of action for negligent appraisal is particularly novel in this case because ordinarily it is asserted by the disappointed buyer of an item against the appraiser, rather than by the seller who, it is thought, would usually have no reason to request or rely upon an appraisal of the item which he already owns and seeks to sell. Upon closer scrutiny, the apparent reason for this deviation is that the plaintiff, at the inception of the negotiations, was not the actual owner of the *1034 sculpture, but rather a consignee who first purchased this piece for immediate resale to the Wolfs after the Museum’s curator allegedly rendered an appraisal of the artwork.
The Museum alleges that these facts as to actual ownership of the sculpture were never disclosed to it and a review of the plaintiff’s papers shows that he does not contend otherwise. The Museum further alleges that it believed that Struna was the actual owner of the sculpture.
Essentially, on this cause of action plaintiff asserts the theory that he was a purchaser damaged by his reliance on the Museum’s appraisal of the artwork. Thus, whereas plaintiff stood in the shoes of a seller on the first three causes of action against the Museum, the plaintiff, on the fourth cause of action now shifts his posture to that of a wronged buyer.
First, the Museum contends that it is entitled to summary judgment because it never in fact rendered an appraisal to the plaintiff. The plaintiff however vigorously disputes this fact and submits an affidavit from Victor Wiener which states that Wiener asked the Museum’s curator to appraise and authenticate the sculpture for the plaintiff and that “after examining it [the curator] assured me that it was an authentic Nadelman and one of the best he’d ever seen.” Based on the conflicting affidavits, a factual issue exists as to whether or not the Museum appraised the sculpture. Thus, if this were the only ground urged by the Museum in support of their motion for summary judgment on this cause of action, I would be inclined to deny their motion.
The Museum, however, contends that even if it is found that there was an appraisal, dismissal of this cause of action is still warranted because: (1) there was no relationship between the Museum and Struna which would give rise to a duty of care by the Museum; and (2) the Museum had no knowledge or reason to know that Struna would act in reliance on any such appraisal.
A claim for negligent appraisal is in essence a claim for negligent representation. With respect to liability for negligent statements the law is: “Although it is a broad general rule that an action will not lie for negligent misrepresentations, there may be liability for damages resulting from the negligent utterance of words under certain circumstances. Thus, in some cases a negligent statement may be the basis for a recovery of damages. Liability in such cases arises only where there is a duty, if one speaks at all, to give the correct information. This involves many considerations. There must be knowledge, or its equiva *1035 lent, that the information is desired for a serious purpose; that he to whom it is given intends to rely and act upon it; that, if false or erroneous, he will because of it be injured in person or property. Finally, the relationship of the parties, arising out of contract or otherwise, must be such that in morals and good conscience the one has the right to rely upon the other for information, and the person giving the information owes a duty to give it with care. Generally, therefore, negligent words are not actionable unless they are uttered directly, with knowledge or notice that they will be acted on, to one to whom the speaker is bound by some relation of duty, arising out of public calling, contract or otherwise, to act with care if he acts at all, or, as has been said, unless there is a duty, if one speaks at all, to give the correct information.” (24 NY Jur, Fraud and Deceit, § 153; International Prods. Co. v Erie R. R. Co., 244 NY 331 [1927], cert denied 275 US 527 [1927].)
In support of its cause of action for negligent appraisal against the Museum, the plaintiff cites a number of cases where an appraiser was held liable for the damages flowing from his negligent appraisal or words.
Thus, in Oestreicher v Simpson (243 NY 635 [1924]), the plaintiff hired the defendant to appraise certain jewelry which the plaintiff had informed the defendant that he desired to purchase. The defendant appraised the jewelry for more than its actual worth; the plaintiff relied on the appraisal and consequently overpaid for the jewelry. The plaintiff sued the defendant on a theory of negligence and prevailed.
Similarly, in Navarre Hotel & Importation Co. v American Appraisal Co. (156 App Div 795 [1st Dept 1913]), the defendant appraiser had been hired by and rendered a written report to the plaintiff’s agent with respect to the value of certain items of property. Relying on defendant’s appraisal the plaintiff took a chattel mortgage in the items of property in order to secure a debt owed to the plaintiff by the owner of the property. When the debtor defaulted in his obligations to the plaintiff, and the plaintiff liquidated the assets previously appraised, it was discovered that the defendant’s appraisal had been grossly excessive. The plaintiff sued contending that due to the defendant’s negligence and his reliance thereon, he had been damaged. The trial court dismissed the complaint because the plaintiff was an undisclosed principal. On appeal, the First Department reversed and ordered a new trial stating: “The jury, therefore, would have been justified in finding that the loss which the plaintiff sustained was due to the negligence of the defendant.” (Supra, at p 798.)
*1036 In Chemical Bank v National Union Fire Ins. Co. (74 AD2d 786 [1st Dept 1980], appeal withdrawn 53 NY2d 864 [1981]), the court relying on White v Guarante (43 NY2d 356 [1977]), stated: “If it be shown that a real estate appraiser, retained by a property owner to make an appraisal that he knows the owner will use to obtain financing, makes it in a grossly negligent manner so as to inordinately overstate the value, we are not, unlike the dissent, prepared to hold the appraiser exempt from liability to the damaged financing party.” (74 AD2d, at p 787.)
. I find that under the facts presented here, the requisite elements necessary for tort liability for negligent appraisal are lacking and the defendant therefore cannot be found liable as a matter of law.
As previously stated, neither the plaintiff (nor his agent) ever communicated to the defendant that the plaintiff was not the actual owner of the sculpture at the time the appraisal was allegedly requested and rendered. Specifically, nowhere does the plaintiff allege that the Museum or its curator knew or should have known that plaintiff only had the sculpture on consignment, that the plaintiff had not yet purchased it himself, or any other reason why the plaintiff might have relied on the curator’s opinion as to the authenticity of the sculpture. So, the plaintiff fails to show how the Museum could have known that the plaintiff planned to act in reliance upon any statements of appraisal made by the curator.
In order to state a claim for negligent misrepresentation (or negligent appraisal) it is essential that plaintiff demonstrate that the defendant made his negligent statement “with knowledge or notice that it will be acted upon”. (White v Guarante, 43 NY2d, at p 363; Courteen Seed Co. v Hong Kong & Shanghai Banking Corp., 245 NY 377 [1927].) Plaintiff has failed to show that the defendant Museum, believing plaintiff to be the owner of the sculpture, knew or could have known that plaintiff would act upon his statements. Further, there is no way that the defendant could have known that the plaintiff would be injured if his appraisal was erroneous. (International Prods. Co. v Erie R. R. Co., supra.)
Moreover, the cases routinely require the existence of a “special relationship” between the parties creating a duty of care owed to the plaintiff thus entitling the plaintiff to rely upon the defendant’s representations. Whether or .not a “special relationship” exists depends on many considerations, but more often than not, as demonstrated in the previously discussed cases, it arises out of a contract where the defendant was specifically *1037 ■employed for the purpose of rendering an appraisal to the plaintiff knowing that the plaintiff intended to rely on it. Here, on the other hand, by the plaintiff’s own admission, it appeared that the plaintiff was acting at arm’s length in attempting to achieve a sale of the sculpture to the Museum. This relationship between the parties thus appears to be the very antithesis of the “special relationship” ordinarily required which would support holding the defendant to a higher duty of care than is otherwise required.
Therefore, I find that the Museum cannot be held liable to the plaintiff based on any claim that its curator rendered a negligent appraisal.
Motion granted.