GOLDSCHMIDT & LOEWENICK, INC., Respondent, *v.* DIAMOND STATE FIBRE COMPANY, Appellant.

First Department, March 7, 1919.

Contract — when contract for sale of goods not assignable by purchaser — evidence as to knowledge of and consent to assignment — question of fact.

Where a manufacturing corporation organized under the laws of the State of Delaware entered into an agreement with a German copartnership of international reputation conducting a branch in the city of New York under which said corporation agreed to sell to said firm a certain quantity

of its product during a specified period and at fixed prices upon a credit of thirty days, and gave said firm the right to inspect the goods and to discard such quantities as might not be satisfactory, and it was the intention of the parties that the goods were to be sold for use in Germany and thereby create a demand for them, the contract was personal in its nature and involved a relationship of confidence between the firm and the corporation, and the former was not at liberty to assign the same.

An attempted assignment to a corporation formed to conduct the branch business of the firm made without the knowledge or consent of the other party to the agreement, conferred no right upon said corporation to demand performance.

In an action by the corporation formed to take over the branch business of the copartnership against the manufacturing corporation to recover damages for defendant's failure and refusal to deliver the manufactured product pursuant to the contract, evidence of correspondence consisting of letters from plaintiff bearing its corporate name which differed from the copartnership name only in the addition of " Inc." addressed to the defendant, and of other letters written by the defendant to the plaintiff under the latter's firm name, and of the payment for goods sold by defendant to the plaintiff by checks of the latter signed with its corporate name, and of one small order of the plaintiff corporation for the product covered by the contract, did not establish knowledge and consent by the defendant to the assignment and transfer to the corporation.

The question as to whether or not defendant was advised of and acquiesced in the assignment to plaintiff was · one of fact to be determined by the jury under the evidence.

APPEAL by the defendant, Diamond State Fibre Company, from an order of the Supreme Court, made at the New York Trial Term and entered in the office of the clerk of the county of New York on the 6th day of April, 1918, setting aside the verdict of a jury in favor of the defendant and granting a new trial.

*Harlan Moore* of counsel [*Henry Waldman* and *Joseph C. Kadane* with him on the brief], for the appellant.

*Joseph M. Proskauer* of counsel [*James Garfield Moses* and *Samuel Kramer* with him on the brief], for the respondent.

MERRELL, J.:

This action is brought by the plaintiff, a domestic corporation, to recover of the defendant, a foreign corporation organized under the laws of the State of Delaware, the sum of $125,000 damages by reason of an alleged breach of con-

tract in defendant's failure and refusal to deliver a quantity of flexible fibre, a product manufactured by the defendant corporation.

The contract, for the breach of which plaintiff complains, was made and entered into between a copartnership consisting of Ludwig Heilbrunn and Adolf Heilbrunn, doing business under the firm name and style of Goldschmidt & Loewenick at Frankfort-on-Main in Germany, and which copartnership, at the time of the making of the contract, on December 15, 1914, conducted a branch business at 129 Duane street, in the borough of Manhattan, New York city, parties of the first part, and the defendant, party of the second part. By the terms of the contract the parties of the first part agreed to buy, and the party of the second part agreed to sell, the commodity known as flexible fibre, described in a memorandum of agreement entered into between the parties, upon a permissible credit of thirty days. The party of the second part agreed to give to the parties of the first part the privilege to purchase of said commodity up to 350,000 pounds at prices named in the memorandum agreement during the period from the date of the contract, December 15, 1914, to April 1, 1916, and in consideration thereof the copartnership of Goldschmidt & Loewenick, parties of the first part, agreed to purchase of the party of the second part all their requirements in the fibre during said period. The goods were to be delivered to parties of the first part, f. o. b. steamer, New York, Philadelphia or Baltimore, at the option of parties of the first part. Parties of the first part were to have the right to inspect the goods at the factory of the party of the second part, if they desired, and parties of the first part had the option to discard such quantities of such commodity as might not be satisfactory. Pursuant to this contract the parties of the first part, during the first few months of the life of the contract, ordered and received from the party of the second part, of the commodity they were privileged to purchase, about 57,000 pounds.

On May 21, 1915, without actual notice to the party of the second part, the parties of the first part incorporated the New York branch of their copartnership adopting the copartnership name of Goldschmidt & Loewenick and adding

the abbreviation, " Inc.," as their corporate name, and on the day following, May 22, 1915, without notice to the party of the second part and without defendant's knowledge, so far as the evidence discloses, the said Ludwig Heilbrunn and Adolf Heilbrunn, copartners doing business under the firm name and style of Goldschmidt & Loewenick, assigned, transferred and delivered to the corporation thus formed of Goldschmidt & Loewenick, Inc., all property, contracts, goods, wares and merchandise, and all other assets and effects theretofore owned or held by the said American branch of the copartnership of Goldschmidt & Loewenick. Of such assignment and transfer the defendant then had no notice, nor did it in any manner consent thereto.

Beyond the purchase of the 57,000 pounds of the fibre by the copartnership, no further orders were given the defendant for its product by said copartnership. The contract, after the incorporation of the American branch of the copartnership, seems to have practically lain dormant until March 27, 1916, when the plaintiff corporation, which, it is claimed, by assignment, had acquired the right of the copartnership to require the delivery of defendant's product, made a demand upon defendant that it deliver to said corporation, the plaintiff herein, the balance of said 350,000 pounds of the fibre, amounting to 293,000 pounds. This order was received by the defendant on March 28, 1916, three days before the expiration of the term during which it might have been called upon to furnish its product under said contract. On March 31, 1916, the plaintiff amplified its demand by specifying the amounts and dates of delivery when said goods should be delivered by the defendant. Plaintiff's demand was not honored by the defendant, and on April 7, 1916, defendant wrote the plaintiff corporation refusing to recognize its right to demand the delivery of said balance of 293,000 pounds of the fibre, and declining to deliver the same. Thereupon this action was brought by the plaintiff to recover damages by reason of such refusal. The contention of the defendant upon the trial was that the contract was personal in its nature and involved a relationship of confidence between the copartnership of Goldschmidt & Loewenick and said defendant, and that the copartnership was not at liberty to

assign the same, and by the attempted assignment conferred no right upon plaintiff to demand the performance of the contract by defendant.

To meet defendant's position in this regard, the plaintiff claims that subsequent to the incorporation of the plaintiff and the claimed assignment of the contract in question and of the rights of the copartners therein to the corporation, the defendant had so dealt with the corporation that it had not only received notice of the fact of the incorporation and of the assignment to the plaintiff of the rights of the copartners under the contract, but that defendant acquiesced therein and consented thereto. To show such knowledge and consent the plaintiff introduced correspondence consisting of letters from plaintiff on letterheads bearing the corporate name of Goldschmidt & Loewenick, Inc., addressed to the defendant, and other letters written by the defendant to the plaintiff under the name of Goldschmidt & Loewenick, Inc. The plaintiff also showed the payment for goods sold by the defendant to the plaintiff under said contract by checks of the plaintiff signed with its corporate name, by plaintiff's president. Plaintiff also proved one order of the plaintiff corporation, bearing date January 19, 1916, for the small amount of six dollars and fifty-two cents, of the commodity covered by the contract, which order was honored by the defendant and the goods furnished to plaintiff. Upon this course of dealing the plaintiff insisted upon the trial and now urges that the defendant understood and agreed to the assignment from the copartnership to the plaintiff corporation, and recognized its right to require the full performance of the contract on defendant's part.

Upon the trial the court submitted to the jury the question as to whether or not the aforesaid correspondence and acts of the parties were sufficient to show notice to defendant of such assignment to the plaintiff. The jury returned a verdict in favor of the defendant, in effect holding that the aforesaid acts and course of dealing between the plaintiff and the defendant subsequent to the alleged assignment were insufficient to constitute such notice of the assignment. Upon motion of the plaintiff the court subsequently held that the question as to whether or not such acts constituted notice

was one of law which should have been passed upon by the court, and that such question was improperly submitted to the jury, and, apparently holding that the contract was assignable, thereupon made an order setting aside the verdict and directing a new trial. From such order the defendant brings this appeal.

I am unable to agree with the learned trial court that the contract between the copartnership and the defendant was assignable. The contract, by its terms, it seems to me, involved personal confidence between the parties. By the terms of the contract the copartners were privileged to purchase defendant's product up to 350,000 pounds during the life of the contract. The commodity was to be delivered upon a possible credit of thirty days. The defendant had a right to choose with whom it would deal and to whom it would extend such credit. It may well have been willing to extend the credit of thirty days to the copartnership of Goldschmidt & Loewenick, of large affairs and international reputation, and have been unwilling to deal with and extend like credit to the small corporation embracing merely the New York branch of the business of such copartnership. To the copartners was extended the privilege of inspecting the goods at the defendant's factory, and the purchaser had the right, under the terms of the contract, to discard any of the material which might be found unsatisfactory. Moreover, it was practically conceded on the argument that it was the original intention of the parties that the goods were to be sold for use in Germany. The contract itself provided that the defendant should not " deliver any Glycerine treated Fibre in Russet shade, in thickness up to 4 mm. either *directly* or *indirectly* to Germany," and should not " sell Calcium treated Fibre in Russet shades, for less than nine and one-half (9½) cents per pound under the same terms and conditions, either directly or indirectly to Germany." Without any question the defendant thought that it was dealing with a party not only engaged in business in Germany, but which would place its goods on the German market, and create a demand for defendant's product in the German Empire. Believing this, the defendant cut itself off absolutely from this market in respect to a portion of its goods, and limited its sales, as to

price, as to the balance. Nevertheless, the plaintiff asserts that the defendant could be compelled to recognize an assignment to any firm or person to whom the copartnership might see fit to assign the contract. The defendant had a right to rely upon the personal feature of the contract. The copartnership in question was a well-known German firm, having a known market for its merchandise and doing business in a particular place and country where the defendant might well have wished to introduce its product. The general rule is, " that an executory contract not necessarily personal in its character, which can, *consistent with the rights and interests of the adverse party,* be sufficiently executed by the assignee, is assignable in the absence of agreement in the contract." (*New York Bank Note Co.* v. *Hamilton B. N. Co.,* 180 N. Y. 280; *Delaware County* v. *Diebold Safe Co.,* 133 U. S. 473.)

In the instant case the contract in question was not intended to be speculative, but was made upon the express consideration of a German firm taking its requirements of the vendor's product for use or sale in Germany. That the fibre covered by the contract was intended for exportation is evident, and, in order to introduce its product into Germany and to create a market there the defendant was undoubtedly willing to grant to the German firm of Goldschmidt & Loewenick the privilege of purchasing the great quantity of its goods specified in the contract at a price possibly below that which it was demanding of customers in America. The German market having been closed by war conditions, the vendor is asked to recognize an assignment to an American corporation lacking all elements of the personal or human equation, and which has not at its disposal either the market or the trade of the original vendee. In fact, the only act which the assignee has yet done is to treat the contract as purely speculative and demand the delivery of all of the merchandise mentioned in the contract for purposes other than those contemplated by the contracting parties. Acquiescence in plaintiff's demand would doubtless have resulted in throwing the goods purchased upon the American market at prices that would have completely demoralized such market. In fact, the assignment and the loss of the German market have so entirely altered the original intention of the parties in respect to the sale and

use of the goods in question, as to render the assignment inconsistent " with the rights and interests of " the vendor. (*New York Bank Note Co.* v. *Hamilton B. N. Co., supra.*)  In the above respects the contract was of a personal nature and not within the rule permitting the assignment of executory contracts.

The plaintiff contends that by this assignment the copartners or assignors in nowise relieved themselves from liability under the contract, and that they are still liable to defendant thereon, notwithstanding their assignment to plaintiff.  While this may be true, still the fact remains that concurrently with their incorporation the copartners assigned and transferred everything which they owned, so far as property in America was concerned, to the corporation.  Thereby the said copartners were shorn of all property and assets in America, and while they may still be technically liable, they, having parted with all the property and assets which, as copartners, they held, such liability is without substance.  By such concurrent act, turning over to the plaintiff corporation all of their affairs in America, the plaintiff was actually substituted for the copartnership, and the provision of the contract relating to the requirements of the vendees became a nullity. So far as any possible requirement by the copartners was concerned, the assignment destroyed the same, thereby destroying the consideration for defendant's agreement to furnish its commodity within the time limited, as provided in the contract.  Plaintiff's position, that, since the assignment, defendant could insist upon both the assignors and assignee purchasing their requirements from the defendant, is without force when we consider that coincident with such assignment all business requirements on the part of the copartnership ceased.

The rule as to non-assignability of contracts involving a relation of personal confidence is stated by an eminent English authority (Pollock Cont. [4th ed.] 425), as follows: " Rights arising out of contract can not be transferred if they are coupled with liabilities, or if they involve a relation of personal confidence such that the party whose agreement conferred those rights must have intended them to be exercised only by him in whom he actually confided."

While, from a literal reading of.the rule as thus expressed, it might seem that contractual rights may not be transferred, either where such rights are coupled with liabilities or if they involve a relation of personal confidence between the contracting parties, I do not think the learned author meant to be so understood. Indeed, if the rule, as thus expressed, be taken literally, no contract would be assignable, as it would be difficult to conceive of a contract unaccompanied by liabilities. Undoubtedly the rule would be better expressed by the use of the conjunctive, " and," rather than the disjunctive, " or." This is borne out by the fact that, while in the case of *Arkansas Smelting Co.* v. *Belden Co.* (127 U. S. 379, 388) the Supreme Court of the United States, Mr. Justice GRAY writing, approves the rule as thus stated by Pollock (and which case has been followed in our court in *Moore* v. *Vulcanite Portland Cement Co.*, 121 App. Div. 667, 673; *Rosenthal Paper Co.* v. *National Folding Box & Paper Co.*, 175 id. 606, 613; *Nassau Hotel Co.* v. *Barnett & Barse Corp.*, 162 id. 381, 384), in the later case of *Delaware County* v. *Diebold Safe Co.*, in the same court (133 U. S. 473), Mr. Justice GRAY again writing (at p. 488) upon the authority of *Arkansas Smelting Co.* v. *Belden Co.* (*supra*) uses the conjunctive, " and," and states the rule as follows: " A contract to pay money may doubtless be assigned by the person to whom the money is payable, if there is nothing in the terms of the contract which manifests the intention of the parties to it that it shall not be assignable. But when rights arising out of contract are coupled with obligations to be performed by the contractor, *and* involve such a relation of personal confidence that it must have been intended that the rights should be exercised and the obligations performed by him alone, the contract, including both his rights and his obligations, cannot be assigned without the consent of the other party to the original contract. [*Arkansas Smelting Co.* v. *Belden Co.*, 127 U. S. 379, 387, 388.] "

And in the still later case of *Burck* v. *Taylor* (152 U. S. 634, 651), Mr. Justice BREWER writing, the rule as stated in *Delaware County* v. *Diebold Safe Co.* (*supra*) is quoted and followed.

The one outstanding feature inimical to the assignment

of contracts of this character is the relationship of personal confidence between the contracting parties. If such confidential relationship exists the contract may not be transferred. As was well said by Lord DENMAN in *Humble* v. *Hunter* (12 Q. B. 310, 317; 64 Eng. Com. Law, 309, 316): " You have a right to the benefit you contemplate from the character, credit, and substance of the party with whom you contract."

Upon such principle, under the terms of the contract in question, I am of the opinion that the defendant had an unquestionable right to choose the persons with whom it dealt, and that by no act of the other parties to the contract, without the consent of the defendant, could they transfer to another the rights of such copartners under the contract.

The question then arises as to whether or not, by their acts in dealing with the plaintiff subsequent to the assignment, the defendant acquiesced therein and adopted the acts of the assignors in transferring to plaintiff their rights under the contract. I think the evidence falls far short of showing with any degree of conclusiveness that the defendant at any time understood that it was dealing with any one other than the parties with whom it had originally contracted. It is true the defendant received some letters signed by the plaintiff corporation. Some of these letters were written upon letterheads of the plaintiff, and others, although signed by the plaintiff, were written upon old letterheads of the copartnership of the same name. The name of the corporation was the same as that of the copartners, with the visually unimportant addition of the abbreviation " Inc." It is also true that defendant received payment for some of the goods which it had furnished under the contract by checks bearing the firm signature with the abbreviation " Inc." added. It might well be that there was nothing about this to especially attract the attention of the defendant. Undoubtedly it was more concerned in receiving pay for its commodity than in discovering the source of such pay. It is also true that the evidence shows that an order for goods made by the plaintiff corporation was honored and filled by the defendant, but the amount thereof, six dollars and fifty-two cents, was quite inconsequential, and was, in fact, at prices different than those stated in the contract. Plaintiff claims to have dis-

covered the discrepancy in the price stated in the order, but that it was too small in amount to justify correction, and defendant's attention was never directed to the matter. In view of the practical identity between the name of the corporation and that of the copartnership, it seems to me that even such course of dealing would not necessarily show that the defendant appreciated the change in parties or show acquiescence on defendant's part in a substitution of parties with whom it was dealing. Such course of dealing would be of itself quite insufficient to establish liability on the part of the plaintiff corporation to fulfill the obligations of the copartners under the contract. Moreover, it seems to me that the question as to whether or not defendant was advised of and acquiesced in the assignment to plaintiff was one of fact properly to be determined by the jury under the evidence, and was not one of law to be determined by the court. The jury in this case returned a verdict favorable to the defendant.

I am, therefore, of the opinion that the court at Trial Term improperly set aside the verdict of the jury, and that the order appealed from should be reversed, with costs, and said verdict reinstated, and defendant have judgment thereon dismissing plaintiff's complaint, with costs.

CLARKE, P. J., LAUGHLIN, PAGE and SHEARN, JJ., concurred.

Order reversed, with costs, verdict reinstated, and judgment ordered thereon dismissing the complaint, with costs.