Melvin H. Ostebman, J.
This is an action wherein plaintiffs seek to enjoin defendants from interfering with their right to use a patented embossing machine owned by Chavennes Industrial Synthetics, Inc. (hereinafter called “ C. I. S.”) and leased to the defendants and Martin Silverman pursuant to a written agreement dated October 27, 1953. Plaintiffs- and defendants are converters of plastic sheeting. Silverman, who is a printer of patterns on plastics and converts same into designs, also conducts a separate business under the name of Plastic Printing Corp.
It appears that Silverman first learned of the C. I. S. machine and interested the defendants in it. After some negotiations, the owners of the machine as lessor entered into a contract with Silverman and the defendant as lessee, setting forth the terms by which Silverman and the defendants could operate the machine. Silverman and the defendants agreed to form a corporation to operate the machine, and on February 27, 1954 Silver-man and the defendants executed a certificate of incorporation of Fabricized Plastics Corporation (hereinafter called ‘ ‘ Fabricized”), which certificate was filed in the Secretary of State’s office on March 17, 1954. It was understood and agreed that Silverman and the defendants were each to have a 50% interest in the corporation. Silverman also signed a bank resolution dated May 3,1954 as vice-president of Fabricized. The machine was installed on April 13,1954 at 26-50 Borough Place, Woodside, in the Borough of Queens. Actual production commenced in July, 1954. The building in which the machine was installed also houses a separate business of the defendants, known as Regency Plastics Co.; Fabricized’s quarters are separated from those occupied by Regency by a fire door. The building is owned by *606 Remo Industrialists, Inc., the principal stockholders of which are the defendants and members of their families.
On June 17, 1954, Silverman made an assignment of all his right, title and interest in and to the C. I. S. contract to plaintiffs, their assigns and personal representatives. The defendants do not recognize the validity of this assignment and claim that Silverman’s interest in the contract is not assignable. The defendants have refused to permit the plaintiffs to use the machine.
Harry Schlesinger, one of the plaintiffs, testified that he sent a copy of the assignment to the defendants on June 19, 1954 and then went to the defendants’ premises to negotiate with them for the use of the machine.
It is undisputed that all of the capital for Fabricized was supplied by the defendants and is approximately $31,208.68. It was also admitted by Silverman that he and the defendants discussed the making of a proposed stockholders’ agreement to govern their interest in Fabricized.
The O. I. S. contract describes Silverman and the defendants as “ hereinafter collectively called Lessee ”. It does not refer to them as colessees, as the plaintiffs allege in the complaint. By paragraph 1 of the C. I. S. contract, Silverman and the defendants are jointly and severally liable with respect to all the obligations and undertakings of the lessee. Throughout, the contract refers to Silverman and the defendants as one entity when it describes them as lessee. The machine, which is the subject matter of the lease, is a patented machine, and in paragraph 2 of the C. I. S. contract the “ Lessee agrees not to divulge, and to use all reasonable efforts to prevent the divulgence, to any third parties, of any confidential knowledge, information or data communicated to it by C. I. S.”
By paragraph 3 of the contract, O. I. S. “ agree that for a period of eighteen (18) months following the installation of the machine it shall not rent or sell any like machines to any other job embossers in the territory of the United States of America east of the Mississippi.” Paragraph 5 of the C. I. S. contract provides for the payment of royalties to C. I. S. for the use of the machine based upon production.
Paragraph 9 of the C. I. S. contract requires the lessee “ to keep complete and accurate books of account and records showing the operation and production of the machine in sufficient detail for computation of the payments due hereunder to C. I. S.” and further provides: “ During the life of this Agreement and for six (6) months thereafter, Lessee shall, during all reasonable business hours, permit representatives of C. I. ¡3. to inspect all *607 its books and records pertaining to its operations, as herein provided, in order to enable C. I. S. to verify the correctness of such written statements and of the payments based thereon. ’ ’
A most significant restriction as to the use of the machine is found in paragraph 11 of the O. I. S. contract, which provides: “ The Machine shall at all times be and remain the sole and exclusive property of C. I. S., and the Lessee shall have the right to use it only upon the conditions set forth herein. It shall be used only by persons in Lessee’s direct employ and shall not be shown to others in the embossing or machinery trades without consent of C. I. S.” This paragraph also provides : ‘ ‘ The Machine shall not be transferred or delivered or sublet by the Lessee to any other person, firm or corporation without the prior written consent of G. I. S.”
Paragraph 20 of the contract permits an assignment only to a corporation newly organized by the lessee for the purpose of operating the machine in the interests of Silverman and/or the defendants and makes no provision for any other or further assignment.
It was the intention of Silverman and defendants to form a corporation in accordance with the provisions of paragraph 20 of the O. I. S. contract, in order to further their common interest in this joint adventure. Silverman and the defendants in connection with the formation of Fabricized contemplated and had every intention of entering into a stockholders’ agreement which would limit and restrict the transfer of stock to the immediate parties. After the formation of Fabricized, Silverman refused to enter into such a stockholders’ agreement. In this respect Silverman breached his oral agreement with the defendants by attempting to assign his interest in the C. I. S. contract to the plaintiffs. Although paragraph 20 of the O. I. S. contract permits an assignment to a corporation for the purpose of operating the machine in the interest of Silverman and/or the defendants, it does so, however, without any release of lessee’s obligations to C. I. S.
The relationship which Silverman and the defendants bore to each other was that of joint adventurers. The incidents of a joint adventure and the obligations of the members thereof toward each other are in many respects so similar to those existing in a partnership that their rights, duties and liabilities are to be tested by rules which are closely analogous to and generally substantially the same as those which govern partnerships (30 Am. Jur., Joint Adventures, § 5). The Partnership Law (§ 40, subd. 7) provides that no person can become a member of a partnership without the consent" of all the partners. This pro *608 vision of the statute embodies the doctrine of delectus person-arum. The same doctrine logically applies to a joint adventure and effectively bars plaintiffs from any active participation in this enterprise over the objections of the defendants. As joint adventurers, a fiduciary relationship existed between Silver-man and the defendants which imposed upon them the duty of loyalty, good faith and fair dealing toward each other. Silver-man had no power to substitute the plaintiffs in his place and stead without the consent of his coadventurers. The assignment by Silverman to the plaintiffs was a breach of a,fiduciary duty which Silverman owed to the defendants and was also contrary to the express intent of paragraphs 2, 11 and 20 of the C. I. S. contract.
The agreement is a patent license agreement, which the courts have held does not give the licensee the right to transfer his license without the consent of the owner of the patent (Rock-Ola Mfg. Corp. v. Filben Mfg. Co., 168 F. 2d 919, 922 [C.C.A. 8th]; Hapgood v. Hewitt, 119 U. S. 226) and the right to transfer must be in express words to show such an intent. (Oliver v. Rumford Chem. Works, 109 U. S. 75.) A mere license to a party, without having “ his assigns” or equivalent words to them showing that it was meant to be assignable, is only the grant of a personal power to the licensee, and is not transferable by him to another. (Troy Iron & Nail Factory v. Corning, 14 How. [55 U. S.] 193.) The court finds as a fact that C. I. S. at no time consented to the assignment. The agreement was also of a personal nature involving personal responsibility, trust, confidence and credit and thus not assignable without the consent of the other party. (Nassau Hotel Co. v. Barnett & Barse Corp., 162 App. Div. 381, affd. 212 N. Y. 568; Paige v. Faure, 229 N. Y. 114; Goldschmidt & Loewenick v. Diamond State Fibre Co., 186 App. Div. 688.)
Accordingly, judgment is granted in favor of the defendants, dismissing the complaint. Findings of fact and conclusions of law having been waived by stipulation on the record, the foregoing constitutes the decision of the court, pursuant to section 440 of the Civil Practice Act. Settle judgment accordingly.