### In re LEHAL REALTY ASSOCIATES, Debtor.

**Bankruptcy No. 89 B 20078.**

United States Bankruptcy Court, S.D. New York.

May 17, 1989.

See also, Bkrtcy., 100 B.R. 680.

Isaac Nutovic, New York City, for petitioner.

Marvin Neiman, P.C., New York City, for Israel Halpern.

Robert P. Herzog, Howard Mann, New York City, for Trust Co. of New Jersey.

HEARING ON INVOLUNTARY
CHAPTER 11 PARTNERSHIP
PETITION

HOWARD SCHWARTZBERG,
Bankruptcy Judge.

George Lebovits has filed an involuntary petition for relief under Chapter 11 of the Bankruptcy Code against Lehal Realty Associates, the debtor in the above-captioned case. He claims to be a 75% general partner of the debtor and reasons that his petition is authorized in accordance with 11 U.S.C. § 303(b)(3)(A). Israel Halpern, who owns a 25% interest in the debtor, denies that the petitioner is his partner. The trial of the issues raised by Halpern's answer was held on May 12 and 16, 1989.

## FINDINGS OF FACT

1. On February 9, 1989, an involuntary petition for relief under Chapter 11 of the Bankruptcy Code was filed with this court by George Lebovits ("Lebovits"), against the debtor, Lehal Realty Associates ("Lehal"). Lehal is a New York Partnership located in Monsey, New York. Lebovits alleges that he owns a 75% interest as a general partner in the debtor, Lehal, and that Israel Halpern ("Halpern") owns the other 25% interest.

2. The debtor partnership's only tangible asset is a beneficial interest in 140 acres of undeveloped real property in the Town of Ramapo, Rockland County, New York, which was formerly operated as a golf course ("the golf course").

3. The petitioner, Lebovits, was desirous of acquiring an interest in the golf course. In 1984, he entered into an arrangement with Leib Waldman ("Waldman") whereby they would acquire the golf course together. Lebovits gave $550,000 to Waldman to finance the acquisition of the property. Pursuant to this objective, Lebovits and Waldman formed a corporation known as LaCosta, each owning a 50% interest in the corporation.

4. Waldman informed Lebovits that the purchase price for the golf course property was $1,200,000, but that they could obtain a mortgage in the sum of $1,500,000 from The Trust Company of New Jersey if the property were purchased in Waldman's name individually. Waldman informed Lebovits that if Waldman and Halpern were listed as partners for the purpose of the transaction, a mortgage for $1,500,000 could be obtained, even though the purchase price was only $1,200,000, because the personal financial backing of Waldman and Halpern would justify the loan.

5. Accordingly, on March 6, 1985, a Certificate of Partnership in the name of Lehal Realty Associates was filed with the Clerk of the New York Supreme Court, Rockland County. The Certificate of Partnership indicated that the two general partners of the debtor, Lehal, were Leib Waldman and Israel Halpern.

6. On March 21, 1985, The Trust Company of New Jersey loaned to the debtor, Lehal, $1,500,000 and obtained a mortgage on the golf course property to secure the loan. The Trust Company of New Jersey also received written guarantees of the debtor's performance under its loan agreement from Waldman and Halpern.

7. On March 21, 1985, the debtor, Lehal, acquired title to the golf course property from Waldman, who had obtained title to the property in his individual name.

8. Although Lebovits had previously advanced $550,000 to Waldman for an interest in the golf course property, there was no document reflecting Lebovits' interest in this property. Accordingly, after negotiations between Waldman and Lebovits, Waldman assigned to Lebovits on November 4, 1985, Waldman's 50% interest in the debtor partnership.

9. Lebovits also informed Waldman that he wanted to purchase the entire interest in the golf course property. Waldman informed Lebovits that he could act on behalf of Halpern and would also get Halpern to transfer his interest in Lehal to Lebovits, even though Halpern had never paid anything to be a partner in Lehal.

10. On November 7, 1985, Waldman caused to be prepared and filed an amended Business Certificate reflecting that Lebovits and his wife owned a 100% interest

in Lehal. Waldman signed the Amended Business Certificate and said that Halpern would also sign it. Lebovits' father brought the document to Halpern, who refused to sign it.

11. Lebovits thereafter met with Waldman and Halpern's attorney, Harry Levinson, at which time it was agreed that if Lebovits paid $375,000 to Halpern, Lebovits could acquire 100% of the debtor. Waldman assured Lebovits that Halpern would sell his interest in Lehal.

12. By deed recorded on May 5, 1986, and executed by Waldman, the debtor, Lehal, conveyed the golf course property to Lebovits. At the time that Lebovits acquired title to the golf course property, Waldman and Harry Levinson, who represented Waldman and Halpern, assured Lebovits that Waldman was authorized to transfer title to the golf course property.

13. On August 25, 1986, Halpern, acting individually and on behalf of the debtor, commenced an action against Waldman and Lebovits in the New York Supreme Court, Rockland County, which, among other things, demanded judgment declaring that the conveyance of the golf course property was void. Additionally, on August 26, 1986, Halpern caused a *lis pendens* to be filed against the golf course property.

14. In September of 1987, Halpern and Lebovits entered into an agreement pursuant to which Lebovits purchased 50% of Halpern's interest in the debtor. Halpern acknowledged that his remaining interest in the debtor was limited to 25%. Halpern also agreed to remove the *lis pendens* he had filed in connection with his state court action.

15. Thereafter, Halpern failed and refused to remove the *lis pendens* he had filed against the golf course property and continued to make demands against Lebovits, using the *lis pendens* to block any further refinancing of the debtor's loan from the Trust Company of New Jersey.

16. From November 4, 1985, until early 1987, Lebovits arranged for interest to be paid on the debtor's loan from The Trust Company of New Jersey. He also arranged for the payment of all taxes against the property from November 4, 1985 through December, 1988.

17. In order to finance his obligations with respect to the golf course property, Lebovits assigned a portion of his interest in the debtor partnership to Saul Strulovic, who advanced funds for the payment of interest and taxes with respect to the property. Saul Strulovic has a partnership interest with Lebovits, but is not a partner in Lehal.

18. On December 16, 1988, The Trust Company of New Jersey obtained a judgment of foreclosure against the golf course property.

## DISCUSSION

The only issue blocking the entry of an order for relief in this case is whether or not Lebovits is a general partner with Halpern in Lehal, the debtor partnership. Lebovits contends that both he and Halpern are general partners with the result that he is authorized under 11 U.S.C. § 303(b)(3)(A) to file an involuntary Chapter 11 case against Lehal. Halpern denies that Lebovits is his partner. None of the parties who have appeared in this case has submitted a memorandum of law, relying instead, on the facts at the trial.

Fewer than all of the general partners are authorized to commence an involuntary case under Chapter 7 or 11 pursuant to 11 U.S.C. § 303(b)(3)(A). The debtor, or a general partner in a partnership debtor that did not join in the petition, may file an answer to the petition in accordance with 11 U.S.C. § 303(d). In his answer, Halpern has denied that there exists a partnership relationship between the petitioner, Lebovits and himself.

There is no question that when Waldman assigned his interest in Lehal to Lebovits on November 4, 1985, he did not make Lebovits a partner in Lehal against the will and consent of Halpern, the other 50% partner in Lehal Realty Associates. Section 40(7) of the New York Partnership Law provides:

No person can became a member of a partnership without the consent of all parties.

Additionally, Section 53(1) of the New York Partnership Law provides:

§ 53. **Assignment of partner's interest**

1. A conveyance by a partner of his interest in the partnership does not of itself dissolve the partnership, nor, as against the other partners in the absence of agreement, entitle the assignee, during the continuance of the partnership, to interfere in the management or administration of the partnership business or affairs, or to require any information or account of partnership transactions, or to inspect the partnership books; but it merely entitles the assignee to receive in accordance with his contract the profits to which the assigning partner would otherwise be entitled.

The New York courts have interpreted these sections as follows:

The effect, therefore, of the various provisions of the Partnership Law, above discussed, is that unless the parties have agreed otherwise, a person cannot become a member of a partnership interest without the consent of all the partners whereas an assignment of a partnership interest may be made without their consent, but the assignee is entitled only to receive the profits of the assigning partner.

*Rapoport v. 55 Perry Co.*, 50 A.D.2d 54, 57, 376 N.Y.S.2d 147, 149 (1st Dep't. 1975). *Accord, Altman v. Altman*, 271 App.Div. 884, 67 N.Y.S.2d 119 (2d Dept. 1946); *Schlesinger v. Regenstreif*, 26 Misc.2d 604, 135 N.Y.S.2d 858 (N.Y.Sup.Ct. N.Y.Co. 1954).

There was no evidence that Halpern consented in November of 1985 to becoming a partner with Lebovits in Lehal. However, when Halpern later agreed with Lebovits, in September of 1987, to sell 50% of his interest in Lehal to Lebovits, and to retain a 25% interest, he thereby acknowledged Lebovits as a 75% general partner with him in Lehal. As a 75% general partner of Lehal, Lebovits was authorized under 11

U.S.C. § 303(b)(3)(A) to file an involuntary Chapter 11 case against Lehal.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(A).

2. Waldman's assignment to Lebovits of his 50% interest in Lehal on November 4, 1985, did not make Lebovits a partner with Halpern, who held the other 50% interest in Lehal, because Halpern did not then consent to Lebovits becoming a member of the Lehal partnership.

3. When Halpern sold 50% of his interest in the debtor partnership to Lebovits in September of 1987, retaining a 25% interest in the partnership, he thereby consented to Lebovits becoming a general partner with him in the debtor partnership.

3. As a 75% general partner in Lehal, Lebovits was authorized under 11 U.S.C. § 303(b)(3)(A) to commence an involuntary Chapter 11 case against Lehal.

4. There being no other disputed issues, an order for relief under Chapter 11 shall be entered against Lehal in accordance with 11 U.S.C. § 303(h)(1).