In re LEHAL REALTY ASSOCIATES, Debtor.

George LEBOVITS, individually and as a partner in Lehal Realty Associates, Plaintiff,

v.

Israel HALPERN and The Trust Company of New Jersey, Defendants.

Israel HALPERN, Third–Party Plaintiff,

v.

Saul STRULOVIC, and "John Doe" and "Jane Doe" names being fictitious and unknown to third-party plaintiff as parties having or claiming an interest in or lien upon the premises, Third–Party Defendants.

Bankruptcy No. 89 B 20078.

No. 89 ADV. 6027.

United States Bankruptcy Court, S.D. New York.

April 13, 1990.

Joseph A. Hammerman, Blauvelt, N.Y., for plaintiff.

Marvin Neiman, P.C., New York City, for Israel Halpern.

Bigham Englar Jones & Houston, New York City, for trustee.

### DECISION ON AMENDED COMPLAINT FOR DECLARATORY JUDGMENT AS TO DIVISION OF PROCEEDS FROM SALE OF PARTNERSHIP PROPERTY

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The dispute between the parties in this case relates to a division of the proceeds received by the debtor partnership from the sale of a golf course in Rockland County, New York, to a corporation controlled by Japanese interests, known as Three Little Willows Corp. The facts in this case are more complicated than Gilbert & Sullivan's Mikado, although less entertaining. The international interests in the golf course are represented by parties from the United States, Israel and Japan. With the help of an interpreter at the trial, the court was able to unscramble the basic facts as follows:

## FINDINGS OF FACT

1. On February 9, 1989, an involuntary petition for relief under Chapter 11 of the Bankruptcy Code was filed with this court by George Lebovits ("Lebovits") against the debtor, Lehal Realty Associates ("Lehal"). Lehal is a New York partnership located in Monsey, New York. Lebovits alleged that he owned a 75% interest as a general partner in the debtor and that Israel Halpern ("Halpern") owned the other 25% interest.

2. The debtor's only asset was an interest in 140 acres of undeveloped property in the Town of Ramapo, Rockland County, New York, which was formerly operated as a golf course.

3. In late 1984, Lebovits and Leib Waldman ("Waldman"), another resident of Rockland County, New York, wanted to acquire an interest in the golf course for the purpose of subdividing the property and constructing single family homes. A portion of the funds for this acquisition, were borrowed by Lebovits from Saul Strulovic ("Strulovic"), a resident of Rockland County. As consideration for these funds, Lebovits assigned a portion of his future interest in the property to Strulovic.

4. The purchase price was $1,200,-000.00. Lebovits on his own, could not obtain a mortgage to finance the purchase. However, Waldman said that he represented the interests of Israel Halpern in this country and that Halpern, who resided in Austria and Israel, was a wealthy man who was known to the Trust Company of New Jersey, where sufficient financing could be arranged by way of a mortgage to support their purchase of the golf course.

5. Lebovits gave $550,000.00 to Waldman for a ½ interest in a partnership to be formed by Waldman and Lebovits for the purchase of the property. Waldman informed Lebovits that if Waldman and Halpern were listed as the purchasing partners, the Trust Company of New Jersey would be willing to advance to the partnership $1,500,000.00 pursuant to a mortgage that would be personally guaranteed by Halpern. Lebovits agreed to this approach.

6. On March 6, 1985, a Certificate of Partnership in the name of Lehal Realty Associates was filed with the County Clerk of Rockland County. The Certificate of Partnership indicated that the two general partners of the debtor, Lehal, were Waldman and Halpern. Lebovits was not listed as having any interest in the debtor partnership.

7. On March 21, 1985, Waldman transferred title to the golf course to the Lehal partnership after having acquired title to the property in his own name with funds advanced by the Trust Company of New York, which held a mortgage in the amount of $1,500,000.00 and the personal guaranty of Halpern.

8. Lebovits was concerned that while the golf course was owned by the debtor partnership, its listed partners were Waldman and Halpern. Thus, despite the fact that Lebovits had contributed his funds and those of Strulovic to obtain a 50% interest in the property, there was no reflection of this fact in the debtor's Business Certificate on file with the Rockland County Clerk.

9. After negotiations between Waldman and Lebovits, Waldman informed Lebovits that Halpern would be willing to sell his interest in the golf course to Lebovits, who would then have a 100% interest in Lehal. Pursuant to this arrangement, Waldman caused to be prepared an amended Business Certificate reflecting that Lebovits and his wife owned a 100% interest in Lehal. When the Business Certificate was presented to Halpern in Israel for his signature, Halpern not only refused to sign, but took the position that the golf course was acquired because of his personal guaranty and that he owned the property entirely.

10. Halpern claimed that Waldman had no authority to transfer any interest in Lehal to Lebovits and that Lebovits was not a partner in Lehal with Halpern.

11. In order to confirm that Waldman represented Halpern's interest in the golf course and that Waldman intended to transfer the entire property and a 100%

interest in Lehal to Lebovits upon consummation of an arrangement for Lebovits' purchase of the golf course, Waldman executed and recorded on May 5, 1986, a deed conveying the golf course property to Lebovits, who agreed to hold the property in trust for Lehal until he paid for the remaining 50% interest.

12. On August 25, 1985, Halpern, acting individually and on behalf of the debtor, Lehal, commenced an action against Waldman and Lebovits in the New York Supreme Court, Rockland County, which, among other things, demanded judgment declaring that the conveyance of the golf course property was void. Additionally, on August 26, 1986, Halpern caused a *lis pendens* to be filed against the golf course property. On November 25, 1985 Halpern and his wife filed with the Rockland County Clerk a judgment by confession against the Lehal partnership in the principal sum of $1,700,000.00, which had been previously executed by Halpern in favor of his wife.

13. On December 5, 1985, Halpern and Lebovits entered into an agreement pursuant to which Lebovits agreed to purchase half of Halpern's 50% interest in Lehal. Lebovits viewed this arrangement as giving him a 75% interest in Lehal, with Halpern retaining a 25% interest. Halpern, on the other hand, interpreted this agreement to mean that he agreed to sell 25% of Lehal to Lebovits, retaining 75% for himself.

14. Pursuant to this agreement, Lebovits deposited with Halpern's attorney, Harry L. Klein, a check payable to Halpern in the sum of $375,000.00, to be held in escrow until Lebovits paid $375,000.00 to Halpern as the purchase price for one-half of Halpern's 50% interest in Lehal, or 25% of the Lehal partnership. Thereafter, Lebovits paid $240,000.00 to Halpern, $130,000.00 by wire and $110,000.00 in cash. Additionally, Lebovits paid another $62,500.00 by check on December 6, 1985, which was paid to a third party named Sandrovic at Halpern's direction. On March 16, 1986, Lebovits paid $31,000.00 to Halpern and received a signed receipt from him for this amount. On April 16, 1986, Lebovits paid $19,000.00 to Halpern's

brother-in-law for delivery to Halpern, as reflected by a signed receipt from the brother-in-law. The total paid by Lebovits to Halpern was $352,500.00. An additional $22,500.00 was paid by Lebovits indirectly when he paid $90,000.00 in mortgage interest to the Trust Company of New Jersey, of which 25% or $22,500.00, represented Halpern's portion. The total payments by Lebovits amounted to $375,000.00.

15. Despite the $22,500.00 which Lebovits paid towards the mortgage interest, Waldman refused to transfer a deed to the Lehal property to Lebovits until Lebovits paid an additional $23,000.00 to Waldman. Accordingly, following an arbitration proceeding commenced by Lebovits against Waldman, Lebovits paid the $23,000.00 to Waldman and received a deed to the Lehal property.

16. From November 4, 1985 until early 1987, Lebovits arranged for interest to be paid on the debtor's loan from the Trust Company of New Jersey. He also arranged for the payment of taxes against the property through December, 1988.

17. During all this time, the parties continued to squabble as to who was a partner in Lehal and who owned what percentage of the debtor. While they fought over who was a partner, nobody paid the mortgage debt, with the result that on December 16, 1988, the Trust Company of New Jersey obtained a judgment of foreclosure against the golf course property.

18. In order to protect the property and obtain a stay of the foreclosure sale, Lebovits filed an involuntary Chapter 11 petition against the debtor. Halpern objected to the filing on the ground that he did not regard Lebovits as his partner in Lehal. The Trust Company of New Jersey opposed the Chapter 11 petition because it did not believe that any voluntary partnership existed and that the Lehal debtor did not own any interest in the golf course, which was owned individually either by Waldman or Lebovits.

19. By decision dated May 17, 1989, this court found that when Halpern sold 50% of his interest to Lebovits, he thereby consented to Lebovits becoming a general

partner with him in the debtor partnership so that Lebovits, as a general partner, was authorized under 11 U.S.C. § 303(b)(3)(A) to commence an involuntary Chapter 11 case against the debtor. *In re Lehal Realty Associates*, 101 B.R. 418 (Bankr.S.D.N.Y. 1989).

20. After this court's decision regarding the existence of a partnership between Lebovits and Halpern, Halpern moved for the appointment of a Chapter 11 trustee. The Trust Company of New Jersey joined in the motion. The motion was granted and a Chapter 11 trustee was selected by the United States trustee, pursuant to an order of this court, effective August 7, 1989.

21. After the plan exclusivity period under 11 U.S.C. § 1121 expired, the Trust Company of New Jersey proposed a creditor's plan of liquidation, which was ultimately confirmed by this court by order dated October 16, 1989. Various potential purchasers expressed an interest in acquiring the golf course, with the result that a Japanese-controlled company known as Three Little Willows Corporation offered the highest bid of $7.6 million, which sum was thereafter approved by this court as acceptable. The proceeds from the sale will produce sufficient funds to pay off the mortgage held by the Trust Company of New Jersey, all other secured claims, the administration expenses and fees, and all unsecured claims in full, leaving the balance to be divided between the partners of the debtor, which balance is now in dispute.

*The 25% Dispute*

22. In paragraph 18 of his answer to the complaint filed by Lebovits and Lehal, Halpern alleges that he "owns and possesses a one-half undivided interest in the Golf Course Property" and that Lebovits and Strulovic together own and possess a one-half, undivided interest in the premises. This judicial admission is not totally correct because the golf course is held in trust by Lebovits for the benefit of the debtor, Lehal. Lebovits has at least a 50% interest in the Lehal partnership and claims that he acquired an additional 25% from Halpern

when he purchased one-half of Halpern's 50% interest.

23. On September 9, 1987, Halpern, Lebovits and Strulovic settled the case commenced by Halpern in the New York Supreme Court, Rockland County by entering into a written agreement on that date followed by an addendum dated January 11, 1988. The settlement involved an agreement by Halpern to transfer to Lebovits a 25% interest in Lehal for the agreed sum of $1,050,000.00.

24. The settlement agreement and addendum also provided that Lebovits could satisfy the $1,050,000.00 purchase obligation by making the following payments:

(a) Pay that portion of the United Trust Company of New Jersey's mortgage that was attributable to Halpern's share of the obligation to the mortgagee;

(b) Transfer to Halpern the deed in a property located on Melnick Drive in Monsey, New York free of any liens and charges, or, at Halpern's option, pay him $425,000.00;

(c) Pay $150,000.00 to Halpern within two years from the execution of the settlement agreement;

(d) Pay an additional sum of $50,000.00 to Halpern within one month of the execution of the agreement; and

(e) Pay Halpern's share of the interest and taxes with respect to the United Trust Company of New Jersey's mortgage that had accrued as of the date of the settlement agreement, which was approximately $50,000.00.

25. Only after Lebovits paid $1,050,-000.00 to Halpern, or fully satisfied the alternative conditions provided in the September 9, 1987 settlement agreement and the subsequent addendum, was he entitled to receive from Halpern the additional 25% share in Lehal.

26. Although Lebovits made various payments to Halpern or to others for remittance to Halpern and paid interest on the mortgage from the Trust Company of New Jersey until early 1987, in addition to having paid taxes which accrued against the golf course property through December of

1988, he did not fully satisfy the payments to Halpern called for under the September 9, 1987 settlement agreement and addendum. Halpern's share of the mortgage debt, interest and taxes was satisfied from the proceeds of the Lehal sale. However, Halpern was entitled to receive from Lebovits $425,000.00 in lieu of the Melnick Drive deed, $150,000.00 within two years from the execution of the settlement agreement and January 11, 1988 addendum, and an additional $50,000.00 within one year from the settlement agreement and addendum, for a total of $625,000.00.

27. Lebovits never satisfied the obligations specified in the September 9, 1987 agreement as a condition for his obtaining the additional 25% Lehal interest held by Halpern. He never transferred to Halpern a deed to the property on Melnick Drive, Monsey, New York, nor is there any evidence that he made any of the payments Halpern specified in the agreement. Lebovits did make payments towards the mortgage interest and taxes, but these payments were made pursuant to his agreement with Waldman. He also incurred expenses with regard to potential subdivision activities and paid various attorneys' fees. However, there was no proof that these expenses were incurred pursuant to any partnership agreement or authorized by Halpern.. These expenses appear to be for the protection of Lebovits' own pecuniary interests and in furtherance of salvaging his investment in the golf course.

28. Lebovits did advance $85,000.00 to Halpern as a loan to cover Halpern's expenses when Halpern came to New York in December of 1987, expecting to collect some of the funds owed to him by Waldman and Lebovits. This $85,000.00 should be credited to Lebovits in dividing the proceeds from the Lehal partnership according to the 75% interest to which Lebovits is entitled and the 25% interest owned by Halpern.

29. Thus, after the payment of administration expenses and creditor claims, Halpern is entitled to 25% of the proceeds, less $85,000.00 and Lebovits is entitled to the remaining 75%, together with a credit for the $85,000.00 loan to Halpern.

30. Halpern asserted a third-party complaint against Strulovic. In his answer, Strulovic asserted affirmative defenses and counterclaims against Halpern. Although Stulovic attended some of the hearings with respect to the issues in this case, he presented no proof and took no active part in the trial. Moreover, Halpern offered no proof as to his third-party complaint against Strulovic. Therefore, the issues raised in the pleadings between Strulovic and Halpern will not be decided by reason of their abandonment.

31. In his counterclaims, Halpern seeks certain specific relief. In his First Counterclaim, Halpern alleges that he has a 50% interest in the golf course, although the court finds that he holds a 25% interest. In his Second Counterclaim, Halpern seeks a rescission of the agreement which allowed Lebovits to purchase an interest in the golf course for $1,050,000.00. It was found that this agreement was not performed by Lebovits and is moot. In his Third Counterclaim, Halpern seeks damages against Lebovits and Strulovic by reason of the judgment of foreclosure obtained by the Trust Company of New Jersey. This counterclaim will be dismissed because Halpern did not prove that he sustained any damages. The Fourth Counterclaim also seeks damages in the amount of the $1,500,000.00 mortgage note which he guaranteed. This counterclaim will also be dismissed because Halpern has not established that he was damaged.

## DISCUSSION

■ The dispute between Lebovits and Halpern as to the division of the proceeds from the sale of the golf course property is reminiscent of the story that is told of two claimants who appeared before a court holding onto a garment. One of them said: "The whole garment is mine", and the other said: "The whole garment is mine." Tradition has it that the court resolved the dispute by dividing the garment or its value between them. *See The Talmud:* Steinsaltz Edition, p. 7 (Random House 1989).

This solution is not available in the instant case because by Lebovits' own admission, he held the property in trust for the Lehal partnership, in which he claims a 75% interest. On the other hand, Halpern made a partial admission that he sold 25% of the partnership interest to Lebovits. Thus, Lebovits cannot claim more than 75% of the proceeds, whereas Halpern is deemed to have sold a 25% interest to Lebovits. The partial admissions by the parties are at least effective as to these percentages because admissions by litigants in monetary matters are as strong as the evidence of a hundred witnesses. Once a litigant has admitted a monetary claim against him, the court may rely on his admission and need not probe further. *See The Talmud:* Steinsaltz Edition, p. 26 (Random House 1989).

■ Lebovits originally advanced $550,000.00 to Waldman for the purpose of forming a partnership with Waldman in the acquisition of the golf course which became the sole asset of the Lehal partnership. Waldman made it clear to Lebovits that Waldman acted as agent for Halpern, whose assets in this country were subject to Waldman's control. Therefore, Waldman had apparent authority to transfer a one-half interest in the golf course to Lebovits after the property was acquired by the Lehal partnership. Even in those instances where the agent is guilty of fraud, and acts solely to benefit himself, the principal remains liable for the conduct of the agent who acts with apparent authority. *American Society of Mechanical Engineers, Inc. v. Hydrolevel Corporation,* 456 U.S. 556, 102 S.Ct. 1935, 72 L.Ed.2d 330 (1982), *reh'g denied,* 458 U.S. 1116, 102 S.Ct. 3502, 73 L.Ed.2d 1379 (1982). This point was expressed by the late Judge Augustus Hand as follows: "In such circumstances the ignorance of the principal and the fact that the agent is engaged in a fraud either upon his principal or a third party will not avoid liability." *Standard Surety & Casualty Co. of New York v. Plantsville Nat'l Bank,* 158 F.2d 422, 424 (2d Cir.1946), *cert. denied,* 331 U.S. 812, 67 S.Ct. 1203, 91 L.Ed. 1831 (1947). *See In re Perret,* 67 B.R. 757, 773 (Bankr.S.D.N.Y.1986).

Lebovits acquired another 25% interest in the Lehal partnership in December of 1985 when Lebovits paid $375,000.00 in accordance with an escrow arrangement involving his delivery of a $375,000.00 check to be held in escrow by Halpern's attorney until the $375,000.00 was paid. The funds were paid by Lebovits to persons authorized by Halpern to accept the money, including a $130,000.00 direct payment by wire to Halpern. As a result of this transaction, Halpern became an acknowledged partner with Lebovits in the Lehal partnership. *See In re Lehal Realty Associates,* 101 B.R. 418 (Bankr.S.D.N.Y.1989).

Although Lebovits and Halpern entered into an agreement in September of 1987 to settle Halpern's state court action by Lebovits agreeing to purchase Halpern's remaining 25% interest in Lehal for $1,050,-000.00, Lebovits never fully satisfied the settlement conditions. Lebovits did make payments towards the mortgage debt, interest and taxes. These payments were made to protect Lebovits' investment in the Lehal property. There was no proof that Halpern ever made any payments for the acquisition of the Lehal property. However, there was no evidence to show that any of the parties ever expected Halpern to make any contributions other than the issuance of his personal guaranty to the Trust Company of New Jersey for the purpose of obtaining the $1,500,000.00 loan and mortgage with respect to Lehal's purchase of the golf course property. Accordingly, Lebovits advanced $550,000.00 to the Lehal partnership and Halpern contributed his personal guaranty for the mortgage loan of $1,500,000.00, which resulted in each party obtaining a 50% interest in the golf course, which was then held in the name of a partnership consisting of Waldman and Halpern. Lebovits became a partner with Halpern after he received a 50% interest from Waldman and a 25% interest from Halpern.

Accordingly, Lebovits and Halpern may share in the net proceeds of the Lehal partnership, with 75% distributed to Lebovits and 25% distributed to Halpern, less

the $85,000.00 loan from Lebovits which should be repaid from Halpern's 25% share.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(A).

2. The complaint filed by Lebovits for a declaratory judgment that he holds a 100% beneficial interest in the golf course property owned by the debtor, Lehal Realty Associates and that Halpern has no more than a 25% partnership interest, in Lehal has been mooted by the debtor's sale of the golf course property to Three Little Willows Corp., which sale was approved by this court.

3. The evidence establishes that Lebovits holds a 75% interest in the debtor partnership and that Halpern holds the remaining 25% interest.

4. The net proceeds from the sale, after the payment of administration expenses and the claims of creditors, secured and unsecured, shall be distributed to the partners of the debtor on the basis of 75% to Lebovits and 25% to Halpern, less the $85,000.00 loan from Lebovits to Halpern, which will be repaid to Lebovits from Halpern's 25% share.

5. The Third–Party Complaint filed by Strulovic will be dismissed for lack of proof. The Counterclaims filed by Halpern seeking damages against Strulovic and Lebovits will be dismissed for lack of proof. The Counterclaim filed by Halpern with respect to a division of the net proceeds from the sale of the golf course will be dismissed to the extent it conflicts with the distribution to be made in accordance with this court's findings.

SETTLE ORDER on notice in accordance with these findings and conclusions.